(Slip Opinion)          OCTOBER TERM, 2016                    1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## PERRY *v.* MERIT SYSTEMS PROTECTION BOARD

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 16–399.   Argued April 17, 2017—Decided June 23, 2017

Under the Civil Service Reform Act of 1978 (CSRA), the Merit Systems
Protection Board (MSPB or Board) has the power to review certain
serious personnel actions against federal employees. If an employee
asserts rights under the CSRA only, MSPB decisions are subject to
judicial review exclusively in the Federal Circuit. 5 U. S. C.
§7703(b)(1). If the employee invokes only federal antidiscrimination
law, the proper forum for judicial review is federal district court. See
*Kloeckner* v. *Solis*, 568 U. S. 41, 46.

   An employee who complains of a serious adverse employment ac-
tion and attributes the action, in whole or in part, to bias based on
race, gender, age, or disability brings a "mixed case." When the
MSPB dismisses a mixed case on the merits or on procedural
grounds, review authority lies in district court, not the Federal Cir-
cuit. *Id.,* at 50, 56. This case concerns the proper forum for judicial
review when the MSPB dismisses such a case for lack of jurisdiction.

   Anthony Perry received notice that he would be terminated from
his employment at the U. S. Census Bureau for spotty attendance.
Perry and the Bureau reached a settlement in which Perry agreed to
a 30-day suspension and early retirement. The settlement also re-
quired Perry to dismiss discrimination claims he had filed separately
with the Equal Employment Opportunity Commission (EEOC). After
retiring, Perry appealed his suspension and retirement to the MSPB,
alleging discrimination based on race, age, and disability, as well as
retaliation by the Bureau for his prior discrimination complaints.
The settlement, he maintained, did not stand in the way, because the
Bureau had coerced him into signing it. But an MSPB administra-
tive law judge (ALJ) determined that Perry had failed to prove that
the settlement was coerced. Presuming Perry's retirement to be vol-

untary, the ALJ dismissed his case. Because voluntary actions are not appealable to the MSPB, the ALJ observed, the Board lacked jurisdiction to entertain Perry's claims. The MSPB affirmed, deeming Perry's separation voluntary and therefore not subject to the Board's jurisdiction. If dissatisfied with the MSPB's ruling, the Board stated, Perry could seek judicial review in the Federal Circuit. Perry instead sought review in the D. C. Circuit, which, the parties later agreed, lacked jurisdiction. The D. C. Circuit held that the proper forum was the Federal Circuit and transferred the case there. *Kloeckner* did not control, the court concluded, because it addressed dismissals on procedural grounds, not jurisdictional grounds.

*Held*: The proper review forum when the MSPB dismisses a mixed case on jurisdictional grounds is district court. Pp. 9–17.

(a) The Government argues that employees must split their mixed claims, appealing MSPB nonappealability rulings to the Federal Circuit while repairing to the district court to adjudicate their discrimination claims. Perry counters that the district court alone can resolve his entire complaint. Perry advances the more sensible reading of the statutory prescriptions.

*Kloeckner* announced a clear rule: "[M]ixed cases shall be filed in district court." 568 U. S., at 50; see *id.*, at 56. The key to district court review is the employee's "*clai[m]* that an agency action appealable to the MSPB violates an antidiscrimination statute listed in §7702(a)(1)." *Id.*, at 56 (emphasis added). Such a nonfrivolous allegation of jurisdiction suffices to establish district court jurisdiction. EEOC regulations are in accord, and several Courts of Appeals have similarly described mixed-case appeals as those *alleging* an adverse action subject to MSPB jurisdiction taken, in whole or in part, because of unlawful discrimination. Perry, who "complain[ed] of a personnel action serious enough to appeal to the MSPB" and "allege[d] that the [personnel] action was based on discrimination," brought a mixed case, and district court jurisdiction was therefore proper. Pp. 9–12.

(b) The Government's proposed distinction—between MSPB merits and procedural decisions, on the one hand, and the Board's jurisdictional rulings, on the other—has multiple infirmities. Had Congress wanted to bifurcate judicial review, sending merits and procedural decisions to district court and jurisdictional dismissals to the Federal Circuit, it could have said so. See *Kloeckner*, 568 U. S., at 52. The Government's newly devised attempt to distinguish jurisdictional dismissals from procedural dismissals is a departure from its position in *Kloeckner*. Such a distinction, as both parties recognized in *Kloeckner*, would be perplexing and elusive. The distinction between jurisdiction and the merits is also not inevitably sharp, for the two

Syllabus

inquiries may overlap. And because the MSPB may issue rulings on alternate or multiple grounds, some "jurisdictional," others procedural or substantive, allocating judicial review authority based on a separate rule for jurisdictional rulings may prove unworkable in practice. Perry's comprehension of the complex statutory text, in contrast, serves "[t]he CSRA's objective of creating an integrated scheme of review[, which] would be seriously undermined" by "parallel litigation regarding the same agency action." *Elgin* v. *Department of Treasury*, 567 U. S. 1, 14. Pp. 12–17.

829 F. 3d 760, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, BREYER, ALITO, SOTOMAYOR, and KAGAN, JJ., joined. GORSUCH, J., filed a dissenting opinion, in which THOMAS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 16–399

ANTHONY W. PERRY, PETITIONER *v.* MERIT SYSTEMS PROTECTION BOARD

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

[June 23, 2017]

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the proper forum for judicial review when a federal employee complains of a serious adverse employment action taken against him, one falling within the compass of the Civil Service Reform Act of 1978 (CSRA), 5 U. S. C. §1101 *et seq.*, and attributes the action, in whole or in part, to bias based on race, gender, age, or disability, in violation of federal antidiscrimination laws. We refer to complaints of that order, descriptively, as "mixed cases."

In the CSRA, Congress created the Merit Systems Protection Board (MSPB or Board) to review certain serious personnel actions against federal employees. If an employee asserts rights under the CSRA only, MSPB decisions, all agree, are subject to judicial review exclusively in the Federal Circuit. §7703(b)(1). If the employee asserts no civil-service rights, invoking only federal antidiscrimination law, the proper forum for judicial review, again all agree, is a federal district court, see *Kloeckner* v. *Solis*, 568 U. S. 41, 46 (2012); the Federal Circuit, while empowered to review MSPB decisions on civil-service

claims, §7703(b)(1)(A), lacks authority over claims arising under antidiscrimination laws, see §7703(c).

When a complaint presents a mixed case, and the MSPB dismisses it, must the employee resort to the Federal Circuit for review of any civil-service issue, reserving claims under federal antidiscrimination law for discrete district court adjudication?  If the MSPB dismisses a mixed case on the merits, the parties agree, review authority lies in district court, not in the Federal Circuit.  In *Kloeckner*, 568 U. S., at 50, 56, we held, the proper review forum is also the district court when the MSPB dismisses a mixed case on procedural grounds, in *Kloeckner* itself, failure to meet a deadline for Board review set by the MSPB.  We hold today that the review route remains the same when the MSPB types its dismissal of a mixed case as "jurisdictional."  As in *Kloeckner*, we are mindful that review rights should be read not to protract proceedings, increase costs, and stymie employees,[1] but to secure expeditious resolution of the claims employees present.  See *Elgin* v. *Department of Treasury*, 567 U. S. 1, 15 (2012) (emphasizing need for "clear guidance about the proper forum for [an] employee's [CSRA] claims").  Cf. Fed. Rule Civ. Proc. l.

I

A

The CSRA "establishes a framework for evaluating personnel actions taken against federal employees." *Kloeckner* v. *Solis*, 568 U. S. 41, 44 (2012).  For "particularly serious" actions, "for example, a removal from employment or a reduction in grade or pay," "the affected employee has a right to appeal the agency's decision to the MSPB."  *Ibid.* (citing §§1204, 7512, 7701).  Such an appeal

---

[1] Many CSRA claimants proceed *pro se*.  See MSPB, Congressional Budget Justification FY 2017, p. 14 (2016) ("Generally, at least half or more of the appeals filed with the [MSPB] are from *pro se* appellants . . . .").

may present a civil-service claim only. Typically, the employee may allege that "the agency had insufficient cause for taking the action under the CSRA." *Id.,* at 44. An appeal to the MSPB, however, may also complain of adverse action taken, in whole or in part, because of discrimination prohibited by another federal statute, for example, Title VII of the Civil Rights Act of 1964, 42 U. S. C. §2000e *et seq.*, or the Age Discrimination in Employment Act of 1967, 29 U. S. C. §621 *et seq.* See 5 U. S. C. §7702(a)(1); *Kloeckner*, 568 U. S., at 44.

In *Kloeckner*, we explained, "[w]hen an employee complains of a personnel action serious enough to appeal to the MSPB *and* alleges that the action was based on discrimination, she is said (by pertinent regulation) to have brought a 'mixed case.'" *Ibid.* (quoting 29 CFR §1614.302 (2012)). See also §1614.302(a)(2) (2016) (defining "mixed case appeal" as one in which an employee "alleges that an appealable agency action was effected, in whole or in part, because of discrimination"). For mixed cases, "[t]he CSRA and regulations of the MSPB and Equal Employment Opportunity Commission (EEOC) set out special procedures . . . different from those used when the employee either challenges a serious personnel action under the CSRA alone or attacks a less serious action as discriminatory." *Kloeckner*, 568 U. S., at 44–45.

As *Kloeckner* detailed, the CSRA provides diverse procedural routes for an employee's pursuit of a mixed case. The employee "may first file a discrimination complaint with the agency itself," in the agency's equal employment opportunity (EEO) office, "much as an employee challenging a personnel practice not appealable to the MSPB could do." *Id.*, at 45 (citing 5 CFR §1201.154(a) (2012); 29 CFR §1614.302(b) (2012)); see §7702(a)(2). "If the agency [EEO office] decides against her, the employee may then either take the matter to the MSPB or bypass further administrative review by suing the agency in district court."

*Kloeckner*, 568 U. S., at 45 (citing 5 CFR §1201.154(b); 29 CFR §1614.302(d)(1)(i)); see §7702(a)(2). "Alternatively, the employee may initiate the process by bringing her case directly to the MSPB, forgoing the agency's own system for evaluating discrimination charges." *Kloeckner*, 568 U. S., at 45 (citing 5 CFR §1201.154(a); 29 CFR §1614.302(b)); see §7702(a)(1).

Section 7702 prescribes appellate proceedings in actions involving discrimination. Defining the MSPB's jurisdiction in mixed-case appeals that bypass an agency's EEO office, §7702(a)(1) states in relevant part:

"[I]n the case of any employee . . . who—
    "(A) has been affected by an action which the employee . . . may appeal to the [MSPB], and
    "(B) alleges that a basis for the action was discrimination prohibited by [specified antidiscrimination statutes], . . .
"the Board shall, within 120 days of the filing of the appeal, decide both the issue of discrimination and the appealable action in accordance with the Board's appellate procedures . . . ."[2]

Section 7702(a)(2) similarly authorizes a mixed-case appeal to the MSPB from an agency EEO office's decision. Then, "[i]f the MSPB upholds the personnel action (whether in the first instance or after the agency has done so), the employee again has a choice: She may request additional administrative process, this time with the EEOC, or else she may seek judicial review." *Kloeckner*, 568 U. S., at 45 (citing §7702(a)(3), (b); 5 CFR §1201.161; 29 CFR §1614.303).

—————

[2] If the MSPB fails to render a "judicially reviewable action" within 120 days, an employee may, "at any time after . . . the 120th day," "file a civil action [in district court] to the same extent and in the same manner as provided in" the federal antidiscrimination laws invoked by the employee. §7702(e)(1).

Section 7703(b) designates the proper forum for judicial review of MSPB decisions. Section 7703(b)(1)(A) provides the general rule: "[A] petition to review a . . . final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit." Section 7703(b)(2) states the exception here relevant, governing "[c]ases of discrimination subject to the provisions of [§]7702." See *Kloeckner*, 568 U. S., at 46 ("The 'cases of discrimination' in §7703(b)(2)'s exception . . . are mixed cases, in which an employee challenges as discriminatory a personnel action appealable to the MSPB."). Such cases "shall be filed under [the enforcement sections of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Fair Labor Standards Act of 1938, 29 U. S. C. §201 *et seq*.], as applicable." §7703(b)(2). Those enforcement provisions "all authorize suit in federal district court." *Kloeckner*, 568 U. S., at 46 (citing, *inter alia*, 42 U. S. C. §§2000e–16(c), 2000e–5(f); 29 U. S. C. §633a(c); §216(b)). Thus, if the MSPB decides against the employee on the merits of a mixed case, the statute instructs her to seek review in federal district court under the enforcement provision of the relevant antidiscrimination laws. §7703(b)(2); see *Kloeckner*, 568 U. S., at 56, n. 4.[3]

Federal district court is also the proper forum for judicial review, we held in *Kloeckner*, when the MSPB dismisses a mixed case on procedural grounds. *Id*., at 50, 56. We

———————

[3] Our decision in *Kloeckner* v. *Solis*, 568 U. S. 41 (2012), did not merely *assume* that the civil-service component of mixed cases travels to district court. See *id*., at 56, n. 4 ("If the MSPB rejects on the merits a complaint alleging that an agency violated the CSRA as well as an antidiscrimination law, the suit *will* come to district court for a decision *on both questions*." (emphasis added)). But see *post*, at 9–10. Characteristic of "mixed cases," the employee in *Kloeckner* complained of adverse action taken, at least in part, because of discrimination. See 568 U. S., at 47. The Board dismissed that case, not for any flaw under antidiscrimination law, but because the employee missed a deadline set by the MSPB. See *id*., at 47–48.

rested that conclusion on this syllogism: "Under §7703(b)(2), 'cases of discrimination subject to [§7702]' shall be filed in district court." *Id.*, at 50 (alteration in original). Further, "[u]nder §7702(a)(1), [mixed cases qualify as] 'cases of discrimination subject to [§7702].'" *Ibid.* (third alteration in original). Thus, "mixed cases shall be filed in district court." *Ibid.* That syllogism, we held, holds true whether the dismissal rests on procedural grounds or on the merits, for "nowhere in the [CSRA's] provisions on judicial review" is a distinction drawn between MSPB merits decisions and procedural rulings. *Id.*, at 51.

The instant case presents this question: Where does an employee seek judicial review when the MSPB dismisses her civil-service case alleging discrimination neither on the merits nor on a procedural ground, but for lack of jurisdiction?

B

Anthony Perry worked at the U. S. Census Bureau until 2012. 829 F. 3d 760, 762 (CADC 2016). In 2011, Perry received notice that he would be terminated because of spotty attendance. *Ibid.* Later that year, Perry and the Bureau reached a settlement in which Perry agreed to a 30-day suspension and early retirement. *Ibid.* The agreement required Perry to dismiss discrimination claims he had separately filed with the EEOC. *Ibid.*

After retiring, Perry appealed his suspension and retirement to the MSPB. *Ibid.* He alleged discrimination on grounds of race, age, and disability, as well as retaliation by the Bureau for his prior discrimination complaints. *Ibid.* The settlement, he maintained, did not stand in the way, because the Bureau coerced him into signing it. *Ibid.*

An MSPB administrative law judge (ALJ) eventually determined that Perry had failed to prove that the settlement was coerced. *Perry* v. *Department of Commerce*, No. DC–0752–12–0486–B–1 etc. (Dec. 23, 2013) (initial deci-

sion), App. to Pet. for Cert. 32a, 47a. Presuming Perry's retirement to be voluntary, the ALJ dismissed his case. *Id.*, at 33a, 47a. Voluntary actions are not appealable to the MSPB, the ALJ observed, hence, the ALJ concluded, the Board lacked jurisdiction to entertain Perry's claims. *Id.*, at 51a.

The MSPB affirmed the ALJ's decision. See *Perry* v. *Department of Commerce*, 2014 WL 5358308, *1 (Aug. 6, 2014) (final order). The settlement agreement, the Board recounted, provided that Perry would waive his Board appeal rights with respect to his suspension and retirement. *Ibid.* Because Perry did not prove that the agreement was involuntary, the Board determined (in accord with the ALJ) that his separation should be deemed voluntary, hence not an adverse action subject to the Board's jurisdiction under §7702(a)(1). *Id.*, at *3–*4. If dissatisfied with the MSPB's ruling, the Board stated in its decision, Perry could seek judicial review in the Federal Circuit. *Id.*, at *4.

Perry instead filed a *pro se* petition for review in the D. C. Circuit. 829 F. 3d, at 763. The court ordered jurisdictional briefing and appointed counsel to argue for Perry. *Ibid.* By the time the court heard argument, the parties had agreed that the D. C. Circuit lacked jurisdiction, but disagreed on whether the proper forum for judicial review was the Federal Circuit, as the Government contended, or federal district court, as Perry maintained. *Ibid.*

The D. C. Circuit held that the Federal Circuit had jurisdiction over Perry's petition and transferred his case to that court under 28 U. S. C. §1631. 829 F. 3d, at 763. The court's disposition was precedent-bound: In a prior decision, *Powell* v. *Department of Defense*, 158 F. 3d 597, 598 (1998), the D. C. Circuit had held that the Federal Circuit is the proper forum for judicial review of MSPB decisions dismissing mixed cases "on procedural or

threshold grounds." See 829 F. 3d, at 764, 767–768. Notably, *Powell* ranked as a "procedural or threshold matter" "the Board's view of its jurisdiction." 158 F. 3d, at 599 (internal quotation marks omitted).

The D. C. Circuit rejected Perry's argument that *Powell* was undermined by this Court's intervening decision in *Kloeckner*, which held MSPB procedural dispositions of mixed cases reviewable in district court. 829 F. 3d, at 764–768. *Kloeckner*, the D. C. Circuit observed, repeatedly tied its decision to dismissals on "procedural grounds," 568 U. S., at 44, 46, 49, 52, 54, 55. See 829 F. 3d, at 765. Jurisdictional dismissals differ from procedural dismissals, the D. C. Circuit concluded, given the CSRA's reference to mixed cases as those "which the employee . . . *may appeal* to the [MSPB]." *Id.*, at 766–767 (quoting §7702(a)(1)(A); emphasis added). A jurisdictional dismissal, the court said, rests on the Board's determination that the employee may *not* appeal his case to the MSPB. *Id.*, at 766–767. In contrast, a dismissal on procedural grounds, *e.g.*, untimely resort to the MSPB, leaves the employee still "affected by an action which [she] may appeal to the MSPB." *Ibid.* (quoting §7702(a)(1)(A); alteration in original).

We granted certiorari to review the D. C. Circuit's decision, 580 U. S. ___ (2017), which accords with the Federal Circuit's decision in *Conforto* v. *Merit Systems Protection Bd.,* 713 F. 3d 1111 (2013).

## II

Federal employees, the Government acknowledges, have a right to pursue claims of discrimination in violation of federal law in federal district court. Nor is there any doubt that the Federal Circuit lacks authority to adjudicate such claims. See §7703(c) (preserving "right to have the facts subject to trial de novo by the reviewing court" in any "case of discrimination" brought under §7703(b)(2)).

The sole question here disputed: What procedural route may an employee in Perry's situation take to gain judicial review of the MSPB's jurisdictional disposition of a complaint that alleges adverse action taken under the CSRA in whole or in part due to discrimination proscribed by federal law?

The Government argues, and the dissent agrees, that employees, situated as Perry is, must split their claims, appealing MSPB nonappealability rulings to the Federal Circuit while repairing to the district court for adjudication of their discrimination claims. As Perry sees it, one stop is all he need make. Exclusively competent to adjudicate "[c]ases of discrimination," §7703(b)(2), the district court alone can resolve his entire complaint, Perry urges; the CSRA, he maintains, forces no bifurcation of his case.

Section 7702(a)(1), the Government contends, marks a case as mixed only if the employee "has been affected by an action which the employee . . . may appeal to the [MSPB]." Brief for Respondent 15, 17–19, 21. An MSPB finding of nonappealability removes a case from that category, the Government asserts, and hence, from the purview of "[c]ases of discrimination" described in §7703(b)(2). *Id.*, at 21. Only this reading of the CSRA's provisions on judicial review—one ordering Federal Circuit review of any and all MSPB appealability determinations—the Government maintains, can ensure nationwide uniformity in answering questions arising under the CSRA. *Id.*, at 26–32.

Perry emphasizes in response that §7702(a)(1)(A)'s language, delineating cases in which an employee "has been affected by an action which the employee . . . may appeal to the [MSPB]," is not confined to cases an employee may *successfully* appeal to the Board. Brief for Petitioner 19. The MSPB's adverse ruling on the merits of his claim that the settlement was coerced, Perry argues, "did not retroactively divest the MSPB of jurisdiction to render

that decision." *Id.*, at 21. The key consideration, according to Perry, is not what the MSPB determined about appealability; it is instead the nature of an employee's *claim* that he had been "affected by an action [appealable] to the [MSPB]" (here, suspension for more than 14 days and involuntary removal, see §7512(1), (2)). See *id.*, at 11, 23–24. Perry draws support for this argument from our recognition that "a party [may] establish jurisdiction at the outset of a case by means of a nonfrivolous assertion of jurisdictional elements," *Jerome B. Grubart, Inc.* v. *Great Lakes Dredge & Dock Co.*, 513 U. S. 527, 537 (1995). See Brief for Petitioner 21–22.

Perry, we hold, advances the more sensible reading of the statutory prescriptions. The Government's procedure-jurisdiction distinction, we conclude, is no more tenable than "the merits-procedure distinction" we rejected in *Kloeckner*, 568 U. S., at 51.

A

As just noted, a nonfrivolous allegation of jurisdiction generally suffices to establish jurisdiction upon initiation of a case. See *Jerome B. Grubart, Inc.*, 513 U. S., at 537. See also *Bell* v. *Hood*, 327 U. S. 678, 682–683 (1946) (To invoke federal-question jurisdiction, allegations in a complaint must simply be more than "insubstantial or frivolous," and "[i]f the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction."). So too here: whether an employee "has been affected by an action which [she] may appeal to the [MSPB]," §7702(a)(1)(A), turns on her well-pleaded allegations. *Kloeckner*, EEOC regulations, and Courts of Appeals' decisions are corroborative.

We announced a clear rule in *Kloeckner*: "[M]ixed cases shall be filed in district court." 568 U. S., at 50. An em-

ployee brings a mixed case, we explained, when she "complains of a personnel action serious enough to appeal to the MSPB," *e.g.*, suspension for more than 14 days, §7512(2), "and alleges that the action was based on discrimination." *Id.,* at 44 (emphasis deleted). The key to district court review, we said, was the employee's "*clai[m]* that an agency action appealable to the MSPB violates an antidiscrimination statute listed in §7702(a)(1)." *Id.,* at 56 (emphasis added).

EEOC regulations, see *supra*, at 3, are in accord: The defining feature of a "mixed case appeal," those regulations instruct, is the employee's "*alleg[ation]* that an appealable agency action was effected, in whole or in part, because of discrimination." 29 CFR §1614.302(a)(2) (2016) (emphasis added). Several Courts of Appeals have similarly described mixed-case appeals as those *alleging* an adverse action subject to MSPB jurisdiction taken, in whole or in part, because of unlawful discrimination. See, *e.g.*, *Downey* v. *Runyon*, 160 F. 3d 139, 143 (CA2 1998) ("Mixed appeals to the MSPB are those appeals *alleging* an appealable action affected in whole or in part by prohibited discrimination." (emphasis added)); *Powell*, 158 F. 3d, at 597 (defining mixed-case appeal as "an appeal *alleging* both a Board-jurisdictional agency action and a claim of unlawful discrimination" (emphasis added)). See also *Conforto*, 713 F. 3d, at 1126–1127, n. 5 (Dyk, J., dissenting).[4]

Because Perry "complain[ed] of a personnel action serious enough to appeal to the MSPB" (in his case, a 30-day suspension and involuntary removal, see *supra*, at 6;

---

[4] Our interpretation is also consistent with another CSRA provision, §7513(d), which provides that "[a]n employee against whom an action is taken under this section is entitled to appeal to the . . . Board." Because the "entitle[ment] to appeal" conferred in §7513(d) must be determined before an appeal is filed, such a right cannot depend on the outcome of the appeal.

§7512(1), (2)) and "allege[d] that the [personnel] action was based on discrimination," he brought a mixed case. *Kloeckner*, 568 U. S., at 44.[5]  Judicial review of such a case lies in district court.  *Id.*, at 50, 56.

B

The Government rests heavily on a distinction between MSPB merits and procedural decisions, on the one hand, and the Board's jurisdictional rulings, on the other.[6]  The distinction has multiple infirmities.

"If Congress had wanted to [bifurcate judicial review,] send[ing] merits decisions to district court and procedural dismissals to the Federal Circuit," we observed in *Kloeckner*, "it could just have said so."  *Id.*, at 52.  The same observation could be made about bifurcating judicial review here, sending the MSPB's merits and procedural decisions to district court, but its jurisdictional dismissals to the Federal Circuit.[7]

----

[5] If, as the dissent and the Government argue, see *post*, at 8–10; Brief for Respondent 19–26, 33–35, Perry's case is not "mixed," one can only wonder what kind of case it is, surely not one asserting rights under the CSRA only, or one invoking only antidiscrimination law.  See *supra,* at 1–2.  This is, of course, a paradigm mixed case: Perry alleges serious personnel actions (suspension and forced retirement) caused in whole or in part by prohibited discrimination.  So did the employee in *Kloeckner*.  She alleged that her firing (a serious personnel action) was based on discrimination.  See 568 U. S., at 47.  Thus Perry, like Kloeckner, well understood what the term "mixed case" means.

[6] Notably, the dissent ventures no support for the principal argument made by the Government, *i.e.*, that MSPB jurisdictional dispositions belong in the Federal Circuit, procedural and merits dispositions, in district court.

[7] As Judge Dyk, dissenting in *Conforto* v. *Merit Systems Protection Bd.*, 713 F. 3d 1111 (CA Fed. 2013), pointed out: "[W]here Congress intended to distinguish between different types of Board decisions, it did so expressly."  *Id.,* at 1124, n. 1 (citing §3330b(b) ("An election under this section may not be made . . . after the [MSPB] has issued a judicially reviewable decision *on the merits* of the appeal." (emphasis added)); §7703(a)(2) ("The Board shall be named respondent in any

The Government's attempt to separate jurisdictional dismissals from procedural dismissals is newly devised. In *Kloeckner*, the Government agreed with the employee that there was "no basis" for a procedure-jurisdiction distinction. Brief for Respondent, O. T. 2012, No. 11–184, p. 25, n. 3; see Reply to Brief in Opposition, O. T. 2012, No. 11–184, pp. 1–2 (stating employee's agreement with the Government that procedural and jurisdictional dismissals should travel together). Issues of both kinds, the Government there urged, should go to the Federal Circuit. Drawing such a distinction, the Government observed, would be "difficult and unpredictable." Brief in Opposition in *Kloeckner*, O. T. 2012, No. 11–184, p. 15 (internal quotation marks omitted). Now, in light of our holding in *Kloeckner* that procedural dismissals should go to district court, the Government has changed course, contending that MSPB procedural and jurisdictional dismissals should travel different paths.[8]

A procedure-jurisdiction distinction for purposes of determining the court in which judicial review lies, as both

——————

proceeding brought pursuant to this subsection, unless the employee . . . seeks review of a final order or decision *on the merits* . . . ." (emphasis added))).

[8] This is not the first time the Government has changed its position. Before the Federal Circuit in *Ballentine* v. *Merit Systems Protection Bd.*, 738 F. 2d 1244 (1984), the Government moved to transfer *to district court* an appeal challenging a jurisdictional dismissal by the MSPB. See *id.*, at 1245. The Government argued that "even a question of the Board's jurisdiction to hear an attempted mixed case appeal must be addressed by a district court." *Id.*, at 1247 (internal quotation marks omitted). Rejecting the Government's position, the Federal Circuit concluded that it could review MSPB decisions on "procedural or threshold matters, not related to the merits of a discrimination claim." *Ibid.* In *Kloeckner*, we disapproved the Federal Circuit's holding with respect to MSPB procedural dismissals. 568 U. S., at 50, 56. Today we disapprove *Ballentine*'s holding with respect to jurisdictional dismissals, thereby adopting precisely the position advanced by the Government in that case.

parties recognized in *Kloeckner*, would be perplexing and elusive. If a 30-day suspension followed by termination becomes nonappealable to the MSPB when the Board credits a release signed by the employee, one may ask why a determination that the employee complained of such adverse actions (suspension and termination) too late, *i.e.*, after a Board-set deadline, does not similarly render the complaint nonappealable. In both situations, the Board disassociates itself from the case upon making a threshold determination. This Court, like others, we note, has some- times wrestled over the proper characterization of timeli- ness questions. Compare *Bowles* v. *Russell*, 551 U. S. 205, 209–211, 215 (2007) (timely filing of notice of appeal in civil cases is "jurisdictional"), with *id.*, at 217–219 (Souter, J., dissenting) (timeliness of notice of appeal is a proce- dural issue).

Just as the proper characterization of a question as jurisdictional rather than procedural can be slippery, the distinction between jurisdictional and merits issues is not inevitably sharp, for the two inquiries may overlap. See *Shoaf* v. *Department of Agriculture*, 260 F. 3d 1336, 1341 (CA Fed. 2001) ("recogniz[ing] that the MSPB's jurisdic- tion and the merits of an alleged involuntary separation are inextricably intertwined" (internal quotation marks omitted)). This case fits that bill. The MSPB determined that it lacked jurisdiction over Perry's civil-service claims on the ground that he voluntarily released those claims by entering into a valid settlement with his employing agency, the Census Bureau. See App. to Pet. for Cert. 27a.[9]

---

[9] In civil litigation, a release is an affirmative defense to a plaintiff's claim for relief, not something the plaintiff must anticipate and negate in her pleading. See Fed. Rule Civ. Proc. 8(c)(1) (listing among affirma- tive defenses "release" and "waiver"); *Newton* v. *Rumery*, 480 U. S. 386, 391 (1987). In that light, the MSPB's jurisdiction should be determined by the adverse actions Perry asserts, suspension and forced retirement; the settlement releasing Perry's claims would figure as a defense to his

But the validity of the settlement is at the heart of the dispute on the *merits* of Perry's complaint. In essence, the MSPB ruled that it lacked jurisdiction because Perry's claims fail on the merits. See *Shoaf*, 260 F. 3d, at 1341 (If it is established that an employee's "resignation or retirement was involuntary and thus tantamount to forced removal," then "not only [does the Board] ha[ve] jurisdiction, but also the employee wins on the merits and is entitled to reinstatement." (internal quotation marks omitted)). See also *Conforto*, 713 F. 3d, at 1126 (Dyk, J., dissenting) ("[I]t cannot be that [the Federal Circuit] lack[s] jurisdiction to review the 'merits' of mixed cases but nevertheless may review 'jurisdictional' issues that are identical to the merits . . . .").[10]

Distinguishing between MSPB jurisdictional rulings and the Board's procedural or substantive rulings for purposes of allocating judicial review authority between district court and the Federal Circuit is problematic for a further reason: In practice, the distinction may be unworkable. The MSPB sometimes rules on alternate grounds, one typed "jurisdictional," another either procedural or substantive. See, *e.g.*, *Davenport* v. *Postal Service*, 97 MSPR 417 (2004) (dismissing "for lack of jurisdiction *and* as untimely filed" (emphasis added)). To which court does appeal lie? Or, suppose that the Board addresses a complaint that encompasses multiple claims, dismissing some for want of jurisdiction, others on procedural or substantive grounds. See, *e.g.*, *Donahue* v. *Postal Service*, 2006 WL 859448, \*1, \*3 (ED Pa., Mar. 31, 2006). Tellingly, the Government is silent on the proper channel-

———————

complaint, it would not enter into the determination whether the Board has jurisdiction over his claims.

[10] If a reviewing court "agree[d] with the Board's assessment," then Perry would indeed have "lost his chance to pursue his . . . discrimination claim[s]," *post*, at 3, for those claims would have been defeated had he voluntarily submitted to the agency's action.

ing of appeals in such cases.

Desirable as national uniformity may be,[11] it should not override the expense, delay, and inconvenience of requiring employees to sever inextricably related claims, resorting to two discrete appellate forums, in order to safeguard their rights. Perry's comprehension of the complex statutory text, we are persuaded, best serves "[t]he CSRA's objective of creating an integrated scheme of review[, which] would be seriously undermined" by "parallel litigation regarding the same agency action." *Elgin*, 567 U. S., at 14. See also *United States* v. *Fausto*, 484 U. S. 439, 444–445 (1988).[12] Perry asks us not to "tweak" the stat-

--------

[11] In *Kloeckner*, we rejected the Government's national uniformity argument. See 568 U. S., at 55–56, n. 4. "When Congress passed the CSRA, the Federal Circuit did not exist," we observed, so uniformity did not then figure in Congress' calculus. *Id.*, at 56, n. 4. Moreover, even under the Government's reading, "many cases involving federal employment issues [would be resolved] in district court. If the MSPB rejects on the merits a complaint alleging that an agency violated the CSRA as well as an antidiscrimination law, the suit will come to district court for a decision on both questions." *Ibid.*

[12] In both *Elgin* v. *Department of Treasury*, 567 U. S. 1 (2012), and *United States* v. *Fausto*, 484 U. S. 439 (1988), we rejected employees' attempts to divide particular issues or claims among review forums. In *Elgin*, a federal employee opted not to seek review of an MSPB ALJ's decision, either before the full Board or in the Federal Circuit; he instead brought in District Court, in the first instance, a constitutional challenge to an agency personnel action. 567 U. S., at 7–8. We concluded that an employee with civil-service claims must follow the CSRA's procedures and may not bring a standalone constitutional challenge in district court. *Id.*, at 8. In *Fausto*, a federal employee with CSRA claims filed an action in the United States Claims Court under the Back Pay Act of 1966. 484 U. S., at 443. We determined that the employee could not bring his action under the Back Pay Act because the CSRA provided "the comprehensive and integrated review scheme." See *id.*, at 454. Contrary to the dissent's suggestion, see *post*, at 10, neither case indicated that the Federal Circuit, as opposed to district court, is the preferred forum for judicial review of all CSRA claims. Rather, both decisions emphasized the benefits of an integrated review scheme and the problems associated with bifurcating consideration of a

ute, see *post*, at 1, but to read it sensibly, *i.e.*, to refrain from reading into it the appeal-splitting bifurcation sought by the Government. Accordingly, we hold: (1) the Federal Circuit is the proper review forum when the MSPB disposes of complaints arising solely under the CSRA; and (2) in mixed cases, such as Perry's, in which the employee (or former employee) complains of serious adverse action prompted, in whole or in part, by the employing agency's violation of federal antidiscrimination laws, the district court is the proper forum for judicial review.

\*  \*  \*

For the reasons stated, the judgment of the United States Court of Appeals for the District of Columbia Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

––––––––––

single matter in different forums. See 567 U. S., at 13–14; 484 U. S., at 444–445. It is the dissent's insistence on bifurcated review, therefore, that "*Elgin* and *Fausto* warned against," *post*, at 10.

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–399

_____

ANTHONY W. PERRY, PETITIONER *v.* MERIT
SYSTEMS PROTECTION BOARD

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

[June 23, 2017]

JUSTICE GORSUCH, with whom JUSTICE THOMAS joins, dissenting.

Anthony Perry asks us to tweak a congressional statute—just a little—so that it might (he says) work a bit more efficiently. No doubt his invitation is well meaning. But it's one we should decline all the same. Not only is the business of enacting statutory fixes one that belongs to Congress and not this Court, but taking up Mr. Perry's invitation also seems sure to spell trouble. Look no further than the lower court decisions that have already ventured where Mr. Perry says we should follow. For every statutory "fix" they have offered, more problems have emerged, problems that have only led to more "fixes" still. New challenges come up just as fast as the old ones can be gaveled down. Respectfully, I would decline Mr. Perry's invitation and would instead just follow the words of the statute as written.

Our case concerns the right of federal employees to pursue their employment grievances under the Civil Service Reform Act. Really, it concerns but a small aspect of that right. Everyone agrees that employees may contest certain adverse employment actions—generally serious ones like dismissals—before the Merit Systems Protection Board. See 5 U. S. C. §§7701–7702, 7512–7513. Everyone agrees, too, that employees are generally entitled to seek

judicial review of the Board's decisions. See §7703. The only question we face today is where. And on that question, the Act provides clear directions.

First, the rule. The Act says that an employee's appeal usually "shall be filed in . . . the Federal Circuit," §7703(b)(1)(A), which then applies a deferential, APA-style standard of review familiar to administrative law, §7703(c). No doubt this makes sense, too, for Congress established the Federal Circuit in no small part to ensure a uniform case law governs Executive Branch personnel actions and guarantees the equal treatment of civil servants without regard to geography. See *United States* v. *Fausto*, 484 U. S. 439, 449 (1988).

Second, the exception. Congress recognized that sometimes agencies taking adverse employment actions against employees violate not just federal civil service laws, but also federal antidiscrimination laws. Usually, of course, employees who wish to pursue discrimination claims in federal district court must first exhaust those claims in proceedings before their employing agency. See, *e.g.*, 42 U. S. C. §2000e–16(c). But the Act provides another option. Employees affected by adverse employment actions that trigger the Act's jurisdiction may (but need not) elect to exhaust their discrimination claims before the Board. See 5 U. S. C. §7702(a). They also may ask the Board to review discrimination claims already exhausted before their employing agencies, and in this way obtain an additional layer of administrative review. See *ibid.* In §7702 of the Act, Congress proceeded to set forth the rules the Board must apply in reviewing these cases of discrimination. And it then said that "[c]ases of discrimination subject to the provisions of section 7702" are exempt from the default rule of Federal Circuit review and instead "shall be filed" in district court "under" specified antidiscrimination statutes like Title VII or the ADEA. §7703(b)(2). At that point, district courts are instructed to

engage in *de novo* factfinding, §7703(c), not APA-style judicial review, just as they would in any other discrimination lawsuit.

Putting these directions together, the statutory scheme is plain. Disputes arising under the civil service laws head to the Federal Circuit for deferential review; discrimination cases go to district court for *de novo* review. Congress allowed employees an elective option to bring their discrimination claims to the Board, but didn't allow this option to destroy the framework it established for the resolution of civil service questions. These rules provide straightforward direction to courts and guidance to federal employees who often proceed *pro se*.

These rules also tell us all we need to know to resolve our case. Construing his *pro se* filings liberally, Mr. Perry pursued civil service and discrimination claims before the Board without first exhausting his discrimination claim before his own agency. The Board held that it couldn't hear Mr. Perry's claims because he hadn't suffered an adverse employment action sufficient to trigger its jurisdiction under the Act. Mr. Perry now seeks to contest the Board's assessment of its jurisdiction and win a review there that so far he's been denied. See, *e.g.,* Brief for Petitioner 24. No doubt, too, he wants the chance to proceed on the merits before the Board for good reason: A victory there is largely unappealable by the government. See 5 U. S. C. §§7701, 7703(d); see also Brief for Respondent 34. And because the scope of the Board's jurisdiction is a question of civil service law, Mr. Perry must go to the Federal Circuit for his answer. If that court agrees with Mr. Perry about the scope of the Board's authority, he can return to the Board and argue the merits of his two claims. If instead the court agrees with the Board's assessment of its powers, then Mr. Perry still hasn't lost his chance to pursue his remaining discrimination claim, for he may seek to exhaust that claim in the normal agency

channels and proceed to district court.

Mr. Perry, though, invites us to adopt a very different regime, one that would have the *district court* review the Board's ruling on the scope of its jurisdiction. Having to contest Board rulings on civil service and discrimination issues in different courts, he says, is a hassle. So, he submits, we should fix the problem by allowing civil service law questions to proceed to district court whenever an employee pursues a case of discrimination before the Board. In support of his proposal, he points us to a line of lower court cases associated with *Williams* v. *Department of Army*. And there, indeed, the Federal Circuit adopted a fix much like what Mr. Perry now proposes: allowing civil service claims to tag along to district court with discrimination claims because, in its judgment, "[f]rom the standpoint of judicial economy, consideration of all issues by a single tribunal is clearly preferable." 715 F. 2d 1485, 1490 (1983) (en banc).

Mr. Perry's is an invitation I would run from fast. If a statute needs repair, there's a constitutionally prescribed way to do it. It's called legislation. To be sure, the demands of bicameralism and presentment are real and the process can be protracted. But the difficulty of making new laws isn't some bug in the constitutional design: it's the point of the design, the better to preserve liberty. Besides, the law of unintended consequences being what it is, judicial tinkering with legislation is sure only to invite trouble. Just consider the line of lower court authority Mr. Perry asks us to begin replicating now in the U. S. Reports. Having said that district courts should *sometimes* adjudicate civil service disputes, these courts have quickly and necessarily faced questions about *how* and *when* they should do so. And without any guidance from Congress on these subjects, the lower courts' solutions have only wound up departing further and further from statutory text—and invited yet more and more questions

still. A sort of rolling, case-by-case process of legislative amendment.

Take this one. Recall that the statute says that *de novo* standard of review applies to cases filed in district court. See 5 U. S. C. §7703(c). But everyone agrees that standard is poorly adapted to the review of administrative civil service decisions. So what's to be done with civil service disputes that tag along to district court? Rather than see the problem as a clue things have gone awry, lower courts following *Williams* have suggested that maybe civil service claims should be assessed under deferential standards of review the Act prescribes only for (yes) *Federal Circuit* cases. And today Mr. Perry encourages us to follow suit too. See Brief for Petitioner 17, n.; *Sher* v. *Department of Veterans Affairs*, 488 F. 3d 489, 499 (CA1 2007), cert. denied, 552 U. S. 1309 (2008).

But that's just the beginning. The statute allows only cases "filed under" certain specified federal antidiscrimination statutes to proceed to district court. Those laws (of course) prescribe remedies to vindicate harms associated with discrimination, including equitable relief and damages. See, *e.g.*, 29 U. S. C. §633a(c). But what remedies can or should a district court afford a plaintiff in a run-of-the-mill civil service dispute that lands there? Might a plaintiff be forced to litigate in the district court only to be told at the end that no remedial authority exists? May a district court fashion some remedy in the absence of a statutory mandate to do so? Should it only adopt APA-style remedies prescribed by the Act for (again) the *Federal Circuit*? Who knows.

Answer all those questions and still more arise. What happens if the Board fully remedies an employee's discrimination claim, but rejects his simultaneously litigated civil service dispute? Should the employee go to district court with a stand-alone civil service complaint, to be nominally "filed" and adjudicated "under" a federal anti-

discrimination statute?  Or has by this point the case somehow transformed into one that should be sent to the Federal Circuit?  *Williams* itself anticipated these particular problems but (notably) declined to take any stab at answering them.  See 715 F. 2d, at 1491.

Still more and even curiouser questions follow.  In some cases a district court will find the employee's discrimination claim meritless.  When that happens, what should the district court do with a tag along civil service claim?  Some lower courts after *Williams* have suggested that cases like these should be transferred back to the Federal Circuit in the "interests of judicial economy."  *Nater* v. *Riley*, 114 F. Supp. 2d 17, 29 (PR 2000).  But isn't it more than a little strange that an employee (often proceeding *pro se*, no less) should be sent to district court only to be bounced back to the Federal Circuit—with each trip undertaken in the name of "judicial economy"?

And speaking of judicial economy, you might wonder what happened to the (no doubt efficient) policy Congress itself articulated when it declared that civil service issues should be decided by the Federal Circuit so they might be subject to a uniform body of appellate case law.  See *Fausto*, 484 U. S., at 449; see also *Elgin* v. *Department of Treasury*, 567 U. S. 1, 13–14 (2012).  In an effort to achieve a simulacrum of that statutory command, one Federal Circuit judge has suggested that the regional circuits hearing tag along civil service issues should defer to Federal Circuit interpretations of civil service laws, much as federal courts defer to state courts on matters of state law when sitting in diversity.  See *Williams*, *supra*, at 1492–1493 (Nichols, J., concurring).  Call it a sort of *Erie* doctrine for the Federal Circuit—if, of course, one lacking any basis in federalism, not to mention the statutory text.

By this point, you might wonder too if accepting Mr. Perry's invitation will even wind up saving him (or those

like him) any hassle at all. Not only because of all the complications that arise from accepting his invitation. But also because, regardless which court hears his case, Mr. Perry should wind up in the same place anyway. If the reviewing court (whichever court that may be) finds that the Board was wrong and it actually possessed jurisdiction over his civil service and discrimination claims, presumably the court will seek to send Mr. Perry back to the Board to adjudicate those claims. See Reply Brief 18 (agreeing with this point). Meanwhile, if the reviewing court concludes that the Board was right and it lacked jurisdiction over Mr. Perry's claims, presumably the court will require him to exhaust his remaining discrimination claim in normal agency channels before litigating it in court. So even if we take up Mr. Perry's ambitious invitation to overhaul the statute, is it even clear that we would save him and those like him any hassle at all? Or might future courts respond to this development with a yet further statutory rewrite, suggesting next that claimants should be allowed to proceed in district court on the merits of both their civil service and discrimination claims? Even where (as here) the discrimination claim remains unexhausted before any agency and the civil service claim isn't one even the Board could hear?

Mr. Perry's proposal for us may be seriously atextual and practically unattractive, but perhaps it has one thing going for it, he says. While we of course owe no fealty to *Williams* or other lower court opinions, and are free to learn from, rather than repeat, their misadventures, Mr. Perry suggests our decision in *Kloeckner* v. *Solis*, 568 U. S. 41 (2012), requires us to rule for him. Whatever we think about the statute's plain terms, he says, we are bound by precedent to send him to district court all the same.

But I just don't see in *Kloeckner* what Mr. Perry would have us find there. This Court was not asked to decide—and did not decide—whether issues arising under the civil

service laws go to district court. Rather, we were asked to answer the much more prosaic question where an employee seeking to pursue *only* a discrimination claim should proceed. See Pet. for Cert. in *Kloeckner* v. *Solis*, O. T. 2012, No. 11–184, p. i ("If the [Board] decides a mixed case without determining the merits of *the discrimination claim*, is the court with jurisdiction over *that claim* the Court of Appeals for the Federal Circuit or a district court?" (emphasis added)). And this Court simply (and quite rightly) responded to that question by holding that "[a] federal employee who *claims* that an agency action appealable to the [Board] *violates an antidiscrimination statute* . . . should seek judicial review in district court, not in the Federal Circuit . . . whether the [Board] decided her case on procedural grounds or instead on the merits." *Kloeckner*, 568 U. S., at 56 (emphasis added). Nothing about the question presented or holding suggests that a claimant wishing to challenge a Board ruling under the civil service laws may also proceed in district court.

Mr. Perry replies that *Kloeckner* endorsed the idea that something called "mixed cases" should go to district court. But that term does not mean what he thinks it means. The phrase "mixed case" appears nowhere in the statute. Instead, it is but "lingo [from] the applicable regulations." *Id.*, at 50. And even those regulations don't say that civil service questions may go to district court. Instead, the regulations use the term "mixed cases" to describe administrative challenges where the employee both "complains of a personnel action serious enough to appeal to [the Board] *and* alleges that the action *was based on discrimination*." *Id.,* at 44 (second emphasis added); see also 29 CFR §1614.302(a)(2) (2016). The regulations thus simply acknowledge that some administrative matters are both sufficient to trigger the Board's authority and raise questions addressed by federal antidiscrimination statutes. They say *nothing* about what goes to district court.

Neither did *Kloeckner* redefine the term "mixed case" in some novel way.  After discussing the regulatory definition of "mixed cases," the decision proceeds to say just this:

> "Under §7703(b)(2), 'cases of discrimination subject to [§7702]' shall be filed in district court.  Under §7702(a)(1), *the 'cases of discrimination subject to [§7702]' are mixed cases*—those appealable to the [Board] and alleging discrimination.  Ergo, mixed cases shall be filed in district court." 568 U. S., at 50 (some brackets in original; emphasis added).

In context, it seems clear that this passage only seeks to restate the statute, using the term "mixed cases" as shorthand for cases that go to district court under §7703(b)(2).  And from that statute we know that only "cases of discrimination . . . filed under" certain specified federal antidiscrimination statutes go to district court—no more, no less.  Nothing in this passage suggests the Court meant to rewrite a regulatory term as a tool to undo a statute.

Now, admittedly, a footnote in *Kloeckner* did seem to go a step farther and assume *Williams'* view that civil service claims may tag along with discrimination claims to district court. *Kloeckner*, 568 U. S., at 55–56, n. 4.  But even by its terms such an assumption wouldn't help Mr. Perry, for he isn't seeking to pursue a discrimination claim in district court.  By his own telling, he is seeking to overturn the Board's holding that it lacked jurisdiction to hear his administrative appeal so he might seek relief there in the first instance.  And that, of course, raises only a question of civil service law.  What's more, the footnote's discussion about *Williams* is no more than dicta.  The footnote addressed only a policy argument from the government and said that argument failed both under *Williams* and for other reasons "[i]n any event."  568 U. S., at 56, n. 4.  As near as I can tell, then, Mr. Perry would have us upend a carefully crafted statutory scheme on the strength of a

comment in one sentence of one footnote offered in reply to a policy argument that failed for other reasons anyway. Full respect for *stare decisis* does not demand so much from us. To the contrary, this Court has long made clear that where, as here, we have not "squarely addressed [an] issue, and have at most assumed [one side of it to be correct], we are free to address the issue on the merits." *Brecht* v. *Abrahamson*, 507 U. S. 619, 631 (1993); see also *Legal Services Corporation* v. *Valazquez*, 531 U. S. 533, 537 (2001) (Scalia, J., dissenting) ("Judicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed").

Notably, even the Court today doesn't read *Kloeckner* as holding that all civil service claims and issues must proceed to district court after a discrimination claim is presented to the Board. Instead, the Court says that result is justified in large measure because it will "best serv[e]" the statute's "'objective of creating an integrated scheme of review[, which] would be seriously undermined' by 'parallel litigation.'" *Ante* at 16 (quoting *Elgin*, 567 U. S., at 14). Yet, the very case the Court quotes for its account about the statute's purpose (*Elgin* which, in turn, quotes *Fausto*) speaks of Congress' desire to provide an "'integrated scheme of administrative and judicial review'" for civil service disputes that "would be seriously undermined" if "employees [had] the right to challenge employing agency actions in district court across the country," and regional district and circuit courts could pass on such matters. *Elgin*, *supra*, at 13–14 (quoting *Fausto*, 484 U. S., at 445). And, respectfully, the result *Elgin* and *Fausto* warned against is *exactly* the result the Court's opinion seems sure to guarantee. Rather than pursue the congressional policy discussed in those cases, the Court seems more nearly headed in the opposite direction.

Beyond its claim about the statute's purpose, the Court offers little in the way of a traditional statutory interpre-

tation. It does not explain how the result it reaches squares with the statute's text and structure, or grapple with the arguments presented here on those counts. The Court does not explain, for example, how exactly a civil service dispute might be said to be "filed under" a federal antidiscrimination statute, what the standard of review might apply in such a matter (nowhere discussed in the statute), or what the remedial powers of the district court could be in these circumstances. And it remains far from obvious whether the Court's eventual answers to questions like these will wind up yielding a regime better for employees, or instead one just different or even a good deal worse.

Indeed, the only answer the Court supplies to any of the questions raised above lies in a footnote and seems telling. There, the Court instructs that Mr. Perry will not be able to pursue his discrimination claim if the district court agrees with the Board that it lacked jurisdiction over his claim. *Ante*, at 15, n. 10. But this will surely come as a surprise to Mr. Perry, who tells us he wants to pursue a federal discrimination claim even if it isn't one the Board has jurisdiction to hear. And it comes as a surprise to me too, for as I've described and the government concedes, nothing in the statute would prevent Mr. Perry from trying to bring a discrimination claim in district court after seeking to exhaust it before his employing agency. See, *e.g.,* Brief for Petitioner 11, 16–17, 28; Brief for Respondent 25; Tr. of Oral Arg. 17.

At the end of a long day, I just cannot find anything preventing us from applying the statute as written—or heard any good reason for deviating from its terms. Indeed, it's not even clear how overhauling the statute as Mr. Perry wishes would advance the efficiency rationale he touts. The only thing that seems sure to follow from accepting his invitation is all the time and money litigants will spend, and all the ink courts will spill, as they work

their way to a wholly remodeled statutory regime. Respectfully, Congress already wrote a perfectly good law. I would follow it.