**UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| JEFFREY L. ROGERS,<br>　　　　　Appellant, | DOCKET NUMBER<br>AT-0752-16-0742-X-1 |
| 　　　v. | |
| DEPARTMENT OF THE NAVY,<br>　　　　　Agency. | DATE: May 25, 2023 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Archibald J. Thomas, III, Esquire, Jacksonville, Florida, for the appellant.

Mark E. Gleason, Esquire, Kings Bay, Georgia, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member[2]

**FINAL ORDER**

On April 13, 2018, the administrative judge issued a compliance initial decision granting the appellant's petition for enforcement and finding the agency

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

[2] Member Leavitt's name is included in decisions on which the three-member Board completed the voting process prior to his March 1, 2023 departure.

in partial noncompliance with the March 1, 2017 initial decision, which mitigated the appellant's removal to a letter of reprimand and ordered him reinstated with back pay and benefits. *Rogers v. Department of the Navy*, MSPB Docket No. AT-0752-16-0742-C-1, Compliance File (CF), Tab 28, Compliance Initial Decision (CID); *Rogers v. Department of the Navy*, MSPB Docket No. AT-0752-16-0742-I-1, Initial Appeal File (IAF), Tab 19, Initial Decision (ID). For the reasons discussed below, we now find the agency in compliance and DISMISS the petition for enforcement.

## BACKGROUND

¶2   Effective July 8, 2016, the agency removed the appellant from his position as an Optical Instrument Repairer for conduct unbecoming a Federal employee. IAF, Tab 1 at 24-33, Tab 3 at 35. The appellant timely appealed his removal to the Board. IAF, Tab 1. In the March 1, 2017 initial decision, the administrative judge mitigated the appellant's removal to a letter of reprimand and ordered the agency to cancel the removal, substitute in its place a letter of reprimand, and provide the appellant with appropriate back pay, interest, and benefits. ID at 18. Neither party filed a petition for review, and the initial decision became the final decision of the Board on April 5, 2017. ID at 21; *see* 5 C.F.R. § 1201.113.

¶3   On July 21, 2017, the appellant petitioned for enforcement of the initial decision. CF, Tab 1. He submitted evidence showing that the agency had cancelled his removal and reinstated him to his former position as of March 9, 2017, and had placed in his Official Personnel File (OPF) a letter of reprimand for conduct unbecoming a Federal employee. *Id.* at 10-13. He also submitted evidence showing that, for the 18 pay periods of the back pay period—from the pay period ending on July 23, 2016, through the pay period ending on March 18, 2017—the agency paid him regular pay back pay in the gross amount of $39,254.40 and overtime back pay for 19 to 19.5 hours of overtime per pay period in the gross amount of $14,332.03. *Id.* at 14. The appellant argued, however,

that the letter of reprimand placed in his OPF contained allegations that were not proven at the hearing and that the agency had failed to provide him the appropriate amount of back pay, interest, and benefits. CF, Tab 1.

¶4 In the April 13, 2018 compliance initial decision, the administrative judge granted the appellant's petition for enforcement, finding the agency in partial noncompliance with the Board's order. CID. First, the administrative judge found that, in determining that the appellant was entitled to 19 or 19.5 hours of overtime back pay per pay period, the agency acted unreasonably by averaging the overtime of all employees of the same title and grade, regardless of their date of seniority, which determines the employee's priority for the assignment of voluntary overtime. CID at 3-5. The administrative judge therefore ordered the agency to recalculate the overtime portion of the appellant's back pay award using only comparators of similar seniority to the appellant and to provide the appellant a narrative explanation of its calculations, the documents on which it based its calculations, and evidence regarding the seniority dates and overtime hours of the employees it used as comparators. CID at 6, 8-9. Second, she found that the letter of reprimand exceeded the scope of the Board's order and ordered the agency to rescind it and replace it with a corrected one retroactive to August 4, 2016. CID at 7-9. Neither party filed any submission with the Clerk of the Board within the applicable time limits, and the appellant's petition for enforcement was referred to the Board for a final decision on issues of compliance pursuant to 5 C.F.R. § 1201.183(b)-(c). *Rogers v. Department of the Navy*, MSPB Docket No. AT-0752-16-0742-X-1, Compliance Referral File (CRF), Tab 1.

¶5 On May 31, 2018, the agency submitted to the Board its first notice of compliance. CRF, Tab 2. The agency stated that it had recalculated the amount of overtime pay due to the appellant by averaging the number of overtime hours worked by the two employees most similarly situated to the appellant in terms of years of service and provided evidence showing that those employees, whom it

designated as Employee 1 and Employee 2, had 19 and 12 years of service, respectively, and that the appellant had 13 years of service. *Id.* at 2, 4. The agency determined these comparators worked an average of 50 hours of overtime per pay period from July 9, 2016, through July 26, 2017.[3] *Id.* at 2. The agency stated that the Defense and Finance Accounting Service (DFAS) would issue payment to the appellant for 50 hours of overtime for each pay period minus the overtime hours already paid and all normal deductions. *Id.* The agency further indicated that it rescinded the letter of reprimand containing the unproven allegations and replaced it with a corrected letter retroactively dated to August 4, 2016. *Id.* at 3. The agency provided a copy of the letter, which reflected that it would remain in the appellant's OPF for 2 years from the date of the letter. *Id.* at 6-7.

¶6      In a June 20, 2018 response to the agency's evidence of compliance, the appellant argued that the agency still had not paid him or provided him its back pay and benefit calculations. CRF, Tab 3 at 4-5. He also expressed concern that the agency had included in its overtime back pay calculation the number of overtime hours worked by the comparators outside of the back pay period without providing any evidence regarding the effect of the additional 9 pay periods on the average. *Id.* at 5. In addition, the appellant argued that the agency had not provided him the "Command Letter" and supporting documents identified in the "DFAS Checklist" at the end of the initial decision. *Id.* at 6; ID at 27.

¶7      On August 3, 2018, the agency submitted a second notice of compliance indicating that it had paid the appellant's back pay award in full on June 29,

---

[3] As noted above, the agency reinstated the appellant to his former position as of March 9, 2017. CF, Tab 1 at 10. However, the agency calculated the appellant's additional back pay award by averaging the number of overtime hours worked by the two comparators through July 26, 2017. CRF, Tab 2 at 2, 5. The agency did not explain why it relied on overtime data from outside the back pay period to calculate the appellant's overtime back pay award.

2018, and had rescinded and redrafted the prior letter of reprimand. CRF, Tab 4 at 4-5. Regarding its overtime back pay calculations, the agency submitted a chart showing the number of overtime hours per pay period for which it had previously paid the appellant and, by subtracting that number from 50 hours, the number of additional hours of overtime for which he was owed payment for each pay period. *Id.* at 9. The chart reflects that, for the 27 pay periods from July 23, 2016, through July 22, 2017,[4] he was entitled to retroactive earnings for a total of 897.35[5] additional hours of overtime. *Id.* Notwithstanding its determination that the appellant was entitled to payment for 897.35 additional hours of overtime, the agency's submissions reflect that it paid the appellant for 882.35 hours of overtime and 16 hours of regular pay. *Id.* at 41, 44-47.

¶8 In an August 23, 2018 response to the agency's second notice of compliance, the appellant argued that the agency failed to explain how it calculated his Thrift Savings Plan (TSP) withholdings and contributions for the back pay period and that it appeared that those amounts were incorrect. CRF, Tab 5 at 4. He also requested that the agency certify that it had removed the letter of reprimand from his OPF because the 2-year period from August 4, 2016, had elapsed. *Id.* at 5.

¶9 In an August 7, 2019 submission, the agency asserted that it had reviewed the appellant's TSP withholdings and contributions related to the back pay award

---

[4] The agency did not explain why it paid the appellant additional overtime back pay for the 9 pay periods after his reinstatement. *Compare* CF, Tab 1 at 10, 14 *with* CRF, Tab 4 at 9.

[5] As described in the Clerk of the Board's January 23, 2020 order, there were several discrepancies in the agency's representations regarding the total number of additional overtime hours to which the appellant was entitled, including references to 184 hours, 882.35 hours, or 898.35 hours of overtime. CRF, Tabs 4, 8, 9. In response, the agency clarified that the appellant was entitled to 897.35 hours of additional overtime pay but that he received payment for 882.35 hours of overtime, which included an overpayment of 1 hour, and 16 hours of regular pay, for a total of 898.35 hours of additional retroactive earnings. CRF, Tab 13.

and determined that they were correct. CRF, Tab 8 at 4. The agency explained that TSP withholdings and contributions are not authorized for overtime and that the appellant was therefore entitled only to TSP withholdings and contributions in connection with his retroactive earnings for 16 hours of regular pay. *Id.* at 4-5. Finally, the agency asserted that it had deleted the letter of reprimand from the appellant's official personnel file and provided evidence reflecting the deletion. *Id.* at 5, 8-9.

¶10      In a January 23, 2020 order, the Clerk of the Board ordered the agency to clarify, among other things, why it paid the appellant for 16 hours of regular pay instead of overtime pay. CRF, Tab 9. In response, the agency stated that it paid the appellant 16 hours of regular pay, rather than overtime pay, for the pay period ending on June 10, 2017, because the appellant had not worked 40 hours per week during that pay period but had been absent without leave for 16 hours. CRF, Tab 13 at 5. The agency explained that the Fair Labor Standards Act (FLSA) requires nonexempt employees, such as the appellant, to work 40 hours of work per week before being paid overtime. *Id.* Accordingly, the agency explained that, instead of paying the appellant for an additional 50 hours of overtime for that pay period, it paid him for 16 regular hours and 34 overtime hours. *Id.*

¶11      On March 18, 2020, the appellant challenged the agency's representation that the FLSA required payment of 16 hours of regular pay, arguing that it was contrary to the ordered relief compliance initial decision. CRF, Tab 14 at 4-5. He also reiterated his argument that the agency failed to provide him the documentation set forth in the initial decision's DFAS Checklist. *Id.* at 5-6.

## ANALYSIS

¶12      When the Board reverses a personnel action, it orders that the appellant be placed, as nearly as possible, in the same situation he would have been in had the wrongful personnel action not occurred. *Vaughan v. Department of Agriculture*, 116 M.S.P.R. 319, ¶ 5 (2011). The agency bears the burden to prove compliance

with the Board's order by a preponderance of the evidence.[6]  *Id.*; 5 C.F.R. § 1201.183(d).   An agency's assertions of compliance must include a clear explanation of its compliance actions supported by documentary evidence. *Vaughan*, 116 M.S.P.R. 319, ¶ 5.  The appellant may rebut the agency's evidence of compliance by making specific, nonconclusory, and supported assertions of continued noncompliance.  *Id*.

¶13    In the compliance initial decision, the administrative judge found that the agency had to take the following actions to resolve the outstanding compliance issues:  (1) recalculate the overtime portion of the appellant's back pay award using only comparators of similar seniority as the appellant; (2) provide the appellant a narrative explanation of its calculations, the documents on which it based its calculations, and evidence regarding the seniority dates and overtime hours of the employees it used as comparators; and (3) rescind the March 29, 2017 letter of reprimand and replace it with a corrected one retroactive to August 4, 2016.  CID at 6-9.

¶14    As described above, the agency determined that Employee 1 and Employee 2 were the most similarly situated in terms of service computation date to the appellant, who had 13 years of service, and submitted evidence showing that Employee 1 had 19 years of service and Employee 2 had 12 years of service. CRF, Tab 2 at 2, 4.  The appellant has not challenged the agency's selection of these two employees as the most similarly situated in terms of service computation dates, and we find that they are appropriate comparators for the purposes of calculating the appellant's overtime back pay award.

¶15    The agency submitted evidence showing that from July 9, 2016, through July 26, 2017, Employee 1 worked 1,474 hours of overtime (an average of

---

[6] A preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.  5 C.F.R. § 1201.4(q).

54.5 hours of overtime per pay period), and Employee 2 worked 1,182 hours of overtime (an average of 43.8 hours per pay period). CRF, Tab 2 at 5. The agency therefore determined that the appellant was entitled to 50 hours of overtime back pay for each of the 27 pay periods covering that timeframe. *Id.* at 2. By subtracting the number of overtime hours for which it had already paid the appellant per pay period from 50 hours per pay period, the agency determined that the appellant was entitled to an additional 897.35 hours of overtime pay for the entire period from pay period ending on July 23, 2016 through pay period ending on July 22, 2017. CRF, Tab 2, Tab 4 at 9. As noted above, the agency did not explain why it relied on overtime data from outside of the back pay period to calculate the appellant's overtime back pay award or why it paid him overtime back pay for the 9 pay periods after his reinstatement.

¶16      To the extent the agency relied on comparator overtime data from outside of the back pay period to calculate the appellant's back pay award, we find that the agency erred. The agency should have calculated the overtime back pay owed to the appellant by averaging the number of overtime hours worked by the comparators for the *relevant period*, i.e., the back pay period from the appellant's July 8, 2016 removal through his March 9, 2017 reinstatement. *See Russo v. U.S. Postal Service*, 107 M.S.P.R. 296, ¶ 11 (2007) (stating that one way to calculate overtime back pay is based on the average overtime hours worked by similarly situated employees during the relevant time period). The agency's error is compounded by the fact that it failed to provide any evidence or information reflecting the effect of the comparators' overtime hours worked during the additional pay periods on the average. Nonetheless, given that the agency in fact paid the appellant overtime back pay up to 50 hours per pay period for the 9 pay periods after he had been returned to duty, amounting to over 300 additional hours of overtime pay, we find that the appellant received at least as much overtime back pay as he would have received had the agency properly calculated the average overtime hours worked by the comparators for the relevant period.

CRF, Tab 4 at 45-46. Accordingly, we find that the agency's errors did not prejudice the appellant. In addition, the appellant expressly stated that he would accept the agency's calculation of his overtime back pay if it paid him for 50 hours of overtime per pay period of the back pay period. CRF, Tab 3 at 5. As the agency ultimately did so, in addition to paying him for 50 hours of overtime for 8 of the 9 following pay periods, we find that the appellant is satisfied.

¶17 Although the agency determined that the appellant was entitled to 897.35 hours of additional overtime back pay, the record reflects that the agency actually paid him retroactive earnings for 882.35 overtime hours and 16 regular hours. CRF, Tab 4 at 41, Tab 13 at 5, 7. In response to the Board's request to explain why the agency paid some of the additional overtime hours at a regular rate of pay, the agency explained that the FLSA precluded it from paying the appellant 50 hours of overtime for the pay period ending on June 10, 2017, because he had been recorded as AWOL for 16 hours during that pay period. CRF, Tab 13 at 5. In response and for the first time, the appellant challenged the agency's decision to pay some of the 897.35 hours at a regular rate of pay, arguing that it was contrary to the compliance initial decision. CRF, Tab 14 at 4-5. However, the agency had no obligation to pay the appellant any back pay for the pay periods after his March 9, 2017 reinstatement. As such, the agency's decisions regarding its payment of retroactive earnings to the appellant for the 9 pay periods following his reinstatement, including the payment of 16 hours at a regular rate of pay for the pay period ending on June 10, 2017, are beyond the scope of our review.

¶18 The appellant also challenged the agency's TSP withholdings and contributions in connection with the overtime back pay award. As the agency correctly stated, however, TSP withholding and contribution percentages are calculated on the basis of the appellant's "basic pay," which does not include overtime pay. See 5 C.F.R. §§ 1600.19-.20, 1690.1 (providing that "basic pay" means "basic pay" as defined in 5 U.S.C. § 8331(3)). Accordingly, the agency

properly did not deduct any TSP withholdings or make any agency TSP contributions in connection with the appellant's overtime back pay award. CRF, Tab 4 at 40-41, Tab 8 at 4-5. To the extent the appellant challenges the TSP deduction and contributions in connection with the 16 hours of regular pay from pay period ending on June 10, 2017, we are without authority to review them because they pertain to retroactive earnings outside of the back pay period.

¶19 In light of the foregoing, we find that the agency has established compliance with its obligations to recalculate the overtime portion of the appellant's back pay award using comparators of similar seniority as the appellant and to provide evidence and explanation supporting its calculations. Although the agency erroneously relied on overtime data from outside the back pay period and paid the appellant overtime back pay for 9 pay periods after the end of the back pay period, we find that the appellant was not prejudiced by these errors and that they do not preclude a finding of compliance. We further find that the agency complied with its obligation to rescind and redraft the letter of reprimand, which has since been deleted from the appellant's OPF. Finally, the appellant's assertion that the agency has not provided him the documents from the DFAS Checklist does not establish noncompliance. The DFAS Checklists accompanying Board decisions identify the information the civilian personnel offices must provide to the civilian payroll offices via command letter to process payments ordered by the Board and do not impose any obligation on the agency to provide any documents to the appellant. *See, e.g.*, ID at 27.

¶20 We find that the agency is now in compliance and dismiss the petition for enforcement. This is the final decision of the Merit Systems Protection Board in this compliance proceeding. Title 5 of the Code of Federal Regulations, section 1201.183(c)(1) (5 C.F.R. § 1201.183(c)(1)).

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[7]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain

judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[8]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                              /s/ for
                                  _____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.