**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-1328**

———————

MARK JONES; MICHAEL TAYLOR; FRED A. WYNN,

Petitioners,

v.

UNITED STATES MERIT SYSTEMS PROTECTION BOARD,

Respondent.

———————

Appeal from the United States Merits Systems Protection Board.  (DE-1221-22-0231-W-1)

———————

Argued:  January 24, 2024                        Decided:  June 6, 2024

———————

Before HARRIS, RICHARDSON, and HEYTENS, Circuit Judges.

———————

Reversed by published opinion.  Judge Richardson wrote the opinion, in which Judge Harris and Judge Heytens joined.

———————

**ARGUED:**  Tillman Finley, MARINO FINLEY LLP, Washington, D.C., for Petitioners. Stephen William Fung, UNITED STATES MERIT SYSTEMS PROTECTION BOARD, Washington, D.C., for Respondent.  **ON BRIEF:**  Daniel Marino, MARINO FINLEY LLP, Washington, D.C., for Petitioners.  Allison J. Boyle, General Counsel, Katherine M. Smith, Deputy General Counsel, Jeffrey A. Gaugher, Office of the General Counsel, UNITED STATES MERIT SYSTEM PROTECTION BOARD, Washington, D.C., for Respondent.

RICHARDSON, Circuit Judge:

Mark Jones, Michael Taylor, and Fred Wynn ("Petitioners") appealed to the Merit Systems Protection Board ("MSPB"), alleging that their supervisors at Customs and Border Protection ("CBP") retaliated against them for blowing the whistle on CBP's noncompliance with the DNA Fingerprints Act of 2005. But the MSPB dismissed Petitioners' appeal, determining it lacked jurisdiction to hear it. According to the MSPB, Petitioners had not "nonfrivolously" alleged that their supervisors' failure to promote them and dismantling of their CBP division were "personnel actions" as defined in 5 U.S.C. § 2302(a)(2)(A). We reverse. While there may be a high bar for succeeding on the merits before the MSPB, its jurisdictional bar is low. And Petitioners' claims clear that lower bar.

## I.      Background

### A.      Facts[1]

Acting Director Mark Jones, Acting Deputy Director Michael Taylor, and Program Analyst Fred Wynn led CBP's Weapons of Mass Destruction Division ("WMDD"), a component of CBP's Office of Intelligence. Apart from providing CBP with guidance on weapons of mass destruction, WMDD was tasked with assisting "efforts to disrupt, dismantle[,] and deport" members of the criminal gang MS-13. J.A. 169–70. And it did that latter task well—so well that, in the fall of 2017, CBP praised Petitioners individually, and WMDD as a whole, for their success.

---

[1] Because the jurisdictional question at issue requires us to assume the allegations made in an appellate statement to the MSPB are true, *see infra* Part II.B.1, we recount the facts as Petitioners allege them.

During this period of WMDD's acknowledged success, there were indications that Petitioners would be rewarded with a bump in pay and status. When they helped launch WMDD, Petitioners' jobs were all graded as GS-14.[2] In 2016, Jones was given the title of Acting Director of WMDD—a GS-15 position—and Taylor the title of Acting Deputy Director. While these positions were "acting" rather than permanent, CBP leadership stated that its "goal [was] to assign permanent supervisory slots, when personnel and budgetary limitations allowed." J.A. 284. So Jones and Taylor expected that they'd be permanently placed in those higher-tier positions. And hopes for permanent advancement weren't limited to Jones and Taylor; leadership communicated that it was "attempt[ing] to secure higher-graded, permanent positions for the division" more broadly. *See* J.A. 300.

While WMDD succeeded in its efforts against MS-13, this case stems from another task the division was assigned. In October 2016, a Federal Bureau of Investigation agent emailed the then-CBP Commissioner seeking the Agency's cooperation in collecting DNA samples from certain aliens under the DNA Fingerprints Act of 2005. *See* 34 U.S.C. § 40702(a)(1)(A); 28 C.F.R. § 28.12(b). So CBP tasked WMDD with developing a pilot

---

[2] As explained by the U.S. Office of Personnel Management,

> The General Schedule (GS) classification and pay system covers the majority of civilian white-collar Federal employees . . . in professional, technical, administrative, and clerical positions . . . . The General Schedule has 15 grades—GS-1 (lowest) to GS-15 (highest). Agencies establish (classify) the grade of each job based on the level of difficulty, responsibility, and qualifications required.

U.S. Off. of Pers. Mgmt., *General Schedule Overview*, https://www.opm.gov/policy-data-oversight/pay-leave/pay-systems/general-schedule/ [https://perma.cc/MXS5-XUCE] (last visited June 5, 2024).

program (which we'll call the "DNA Project") for doing so.  Relevant here, Petitioners were assigned this work.

The work went smoothly until November 2017.  That's when Jones reported to Juan Fernandez, the Office of Intelligence's Acting Executive Director, that he believed CBP was "out of compliance" with the DNA Act.  J.A. 171.  Then, in January 2018, WMDD leadership raised the issue again during a briefing that included members of CBP's Office of Chief Counsel ("OCC").  Afterward, OCC attorney Julie Koller contacted Jones and questioned the presentation's accuracy.

Jones was not the only WMDD employee concerned.  In early February, WMDD employee Chad Wood began expressing his concerns about CBP's noncompliance with the DNA Act to colleagues at the U.S. Department of Homeland Security ("DHS").  Soon after, Wood "challenged" Koller to explain why Jones's presentation was wrong and what prevented CBP from complying with the DNA Act. J.A. 172.  The response Wood received was unsatisfying.  So on February 15, 2018, Wood emailed the Chief Advisor to the DHS Secretary and told him that OCC had issued an order telling WMDD to halt work on the DNA Project.  Because Petitioners supported Wood's position, supervisors "perceived [them] as responsible for Wood's February 15 email." *Id.*

Needless to say, leadership wasn't pleased with Wood's email.  In fact, on February 21, they summoned Jones to a meeting to discuss the email.  There, leadership told Jones that, because of Wood's email, the DNA Project *and* the MS-13 project were being removed from WMDD.  Not only that, but WMDD was "transferred . . . to work under the Operational Field Testing Division (OFTD) as a branch."  J.A. 173 (emphasis omitted).

4

As a result, Jones suffered a "two-step demotion" and Taylor was ousted from management. *Id.*

The fallout didn't stop there:  Wood's badge was taken and he was escorted out of the building; leadership announced that WMDD would be removed from the office space built for the division;  Petitioners were removed from daily Office of Intelligence meetings, in which they had been "three of only nine" attendees, J.A. 174; Petitioners' supervisors began disapproving their overtime and revoked Jones's authority to approve overtime; and Wynn was removed from his responsibilities in roughly forty WMDD programs.

In May 2018, Petitioners decided to act.  They first reported this conduct to the U.S. Office of Special Counsel ("OSC"), which referred them to the DHS Secretary.  Second, "[a]t the suggestion of the OSC Disclosure counsel," Petitioners filed complaints with OSC asserting that CBP leadership had retaliated against them for whistleblowing in violation of 5 U.S.C. § 2302(b)(8).  J.A. 36.

In August 2019, OSC sent a withering report to the President which concluded that CBP failed to collect DNA as required by the Act for a decade.  Indeed, the report was "the strongest possible step OSC [could] take to rebuke the agency's failure to comply with the law."  J.A. 238.  And OSC "strongly commend[ed] the whistleblowers for their public service[,] . . . commitment to accountability[,] . . . [and] continued persistence." *Id.*

## B.      Procedural History

Four years later, OSC—despite determining that Petitioners' claims of retaliation for whistleblowing were meritorious—terminated its investigation into Petitioners'

5

complaints. So Petitioners each filed an individual right of action with the MSPB, which an Administrative Judge ("AJ") consolidated into a single appeal.

After the appeals were consolidated, the AJ ordered the parties to submit briefs on the MSPB's jurisdiction. Petitioners complied, submitting a brief that alleged twenty-two specific acts of reprisal against them. And they later augmented the brief with a reply to CBP's jurisdictional brief. Appended to the reply was OSC's preliminary findings about Petitioners' complaints.

Upon review, the AJ determined that the MSPB only had jurisdiction over seven of Petitioners' twenty-two asserted personnel actions. Though all of Petitioners' claims satisfied the first two jurisdictional requirements, the AJ found that fifteen of them did not meet the third: that the retaliatory act constitute a "personnel action."

Petitioners focused on three specific retaliatory actions over which the AJ disclaimed jurisdiction: (1) that CBP "[c]eased contemplating permanent promotions for [Petitioner]s, which were anticipated prior to February 15, 2018"; (2) that CBP "[r]elegated WMDD to a branch under . . . OFTD"; and (3) that CBP "[r]educed the WMDD's size and proceeded to dismantle the Division." J.A. 323. Petitioners requested reconsideration of the AJ's dismissal of those three claims, but the AJ declined to revise his judgment. Petitioners then filed a motion for the MSPB's interlocutory review of the AJ's dismissal of their three main claims, but the AJ denied that, too. So Petitioners devised a strategy to secure immediate judicial review of the AJ's dismissal of their claims.

In December 2022, Petitioners moved to voluntarily dismiss—with prejudice—the seven claims over which the AJ found the MSPB had jurisdiction. They also requested

6

that the AJ enter an "initial decision" which would have the effect of finally disposing of the three claims of retaliation they continued to contest. *See* 5 C.F.R. § 1201.111(b)(3) ("Each initial decision will contain . . . [a]n order making final disposition of the case . . . .").

The AJ issued his initial decision in February 2023. He again explained that invoking the MSPB's jurisdiction requires a petitioner to make a "nonfrivolous allegation of a personnel action under 5 U.S.C. § 2302(a)(2)(A)." J.A. 5. As an initial matter, the AJ grouped all three allegations together and reviewed them as a single assertion that CBP failed to promote Petitioners. Then, while acknowledging that § 2302(a)(2)(A)(ii) states that "a promotion" is a "personnel action," the AJ determined that Petitioners did not make "nonfrivolous" allegations that CBP failed to promote them. "[A] 'failure to make an appointment must manifest itself as a concrete matter than can be taken or done by an agency and reviewed (and undone) by the Board.'" J.A. 8 (quoting *Ruggieri v. Merit Sys. Prot. Bd.*, 454 F.3d 1323, 1326 (Fed. Cir. 2006). And, according to the AJ, that generally requires the agency to either hire another person to the vacant position or to cancel the vacancy. Here, by contrast, "the alleged agency remarks were too preliminary and speculative to amount to a nonfrivolous allegation of such an action." J.A. 8. Thus, the AJ was "constrained to find no jurisdiction." *Id.*

7

By operation of 5 C.F.R. § 1201.113, the AJ's decision became the MSPB's final decision on March 9, 2023. Petitioners timely sought judicial review.[3] *See Mikhaylov v. Dep't of Homeland Sec.*, 62 F.4th 862, 864 (4th Cir. 2023) (noting that an employee may seek judicial review of the MSPB's decision in a whistleblower appeal in the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction).

## II.   Discussion

Petitioners argue that the AJ erred in finding that they did not make nonfrivolous allegations of personnel actions. We agree and thus reverse.

### A.   Petitioners did not impermissibly manufacture a final decision.

We're obligated to ensure we have jurisdiction even when no party has raised the issue. *Schur & Cohan, Inc. v. McDonald*, 328 F.2d 103, 104 (4th Cir. 1964) (per curiam).

Our review is limited to "a final order or decision of the Merit Systems Protection Board." 5 U.S.C. § 7703(a)(1). A final decision "is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). "[T]he central concern of the final judgment rule [is] that piecemeal review of decisions that are but steps toward final judgments on the merits are to be avoided, because they can be effectively and more efficiently reviewed together

---

[3] Upon appeal of the MSPB's final order or decision, the MSPB is "named respondent . . . unless the employee or applicant for employment seeks review of a final order or decision on the merits on the underlying personnel action or on a request for attorney fees, in which case the agency responsible for taking the personnel action shall be the respondent." 5 U.S.C. § 7703(a)(2). Since Petitioners appeal a decision on jurisdiction, not the merits, and do not seek attorney fees, the MSPB is the respondent here.

in one appeal from the final judgments." *James v. Jacobson*, 6 F.3d 233, 237 (4th Cir. 1993).

At first glance, it may appear that there's no question that we have a final order here. Petitioners didn't contest the AJ's initial dismissal of fifteen of their claims, and they voluntarily dismissed the seven claims over which the AJ found the MSPB had jurisdiction. Moreover, the dismissal of those seven claims was *with* prejudice, which generally shows that the dismissal order is a reviewable final judgment. *Cf. Kenny v. Quigg*, 820 F.2d 665, 669 (4th Cir. 1987); *Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*, 728 F.3d 354, 359 (4th Cir. 2013). And finally, the AJ's initial order dismissing the last three claims became a final decision after thirty-five days. *See* 5 C.F.R. § 1201.113. So it would seem that our jurisdiction under 28 U.S.C. § 7703(a)(1) is rock-solid.

That foundation, however, starts to look shakier when what Petitioners did before dismissing the seven claims over which the AJ held the MSPB had jurisdiction is considered. After the AJ dismissed the three claims the Petitioners really cared about, they wanted immediate review. Since the MSPB's regulations allow for such interlocutory appeals only with an AJ's certification, 5 C.F.R. § 1201.91, Petitioners moved for certification. But the AJ denied the motion. So Petitioners took another route to immediate review: They "voluntarily dismiss[ed] with prejudice" the seven claims the AJ found the MSPB had jurisdiction over and requested that the AJ issue an initial decision reiterating its finding that the MSPB lacked jurisdiction over the three they cared about. J.A. 433. Then Petitioners appealed that order.

9

These efforts cause us to evaluate whether Petitioners improperly "manufactur[ed]" finality to secure appellate review of otherwise non-appealable interlocutory decisions. *See Kiviti v. Bhatt*, 80 F.4th 520, 530 (4th Cir. 2023). Permitting creative runarounds of the final judgment rule would "erode the finality principle and disserve its objectives." *Microsoft v. Baker*, 582 U.S. 23, 37 (2017). And Petitioners dismissed the seven claims to get immediate review and skirt the AJ's refusal to certify their interlocutory appeal.

Contriving finality, however, doesn't always preclude our review. We have jurisdiction when the actions taken to create finality work to either (1) recognize what was already effectively a final judgment, *see Affinity Living Grp. v. StarStone Specialty Ins.*, 959 F.3d 634, 639 (4th Cir. 2020), or (2) preclude resurrecting issues that were abandoned for the sake of immediate review,[4] *see Sprint Nextel Corp. v. Wireless Buybacks Holdings, LLC*, 938 F.3d 113, 124 (4th Cir. 2019); 15A Charles A. Wright et al., *Federal Practice and Procedure: Jurisdiction* § 3914.8.1 (3d ed. 2023); Bryan Lammon, *Manufactured Finality*, 69 Villa. L. Rev. (forthcoming 2024). The first situation can arise when, for example, an interlocutory order dismissing some claims on the merits means that the plaintiff cannot establish an element of the remaining claims. *Affinity Living Grp.*, 959

---

[4] In *Kiviti v. Bhatt*, we said that "partial dismissals are final and appealable . . . only when the district court dismisses some claims and, in the process, makes it legally impossible to prevail on the remaining claims, even while allowing them to limp on." 80 F.4th at 531. But that statement is specific to the situation it was discussing: where parties dismiss some claims without prejudice in order to get review of an interlocutory order on other claims. *Id*. It doesn't mean that a dismissal of some claims *with* prejudice is reviewable only if those dismissed claims were legally contingent on the interlocutory order.

10

F.3d at 639. The plaintiff's dismissal of the remaining claims simply recognizes the fact that the remaining claims are dead. In such a situation, the order is final. *Id.*

Here, the order finding the MSPB lacked jurisdiction on the three important claims had no impact on the merits of the remaining seven claims; the seven claims remained as winnable as they were before the order. So this first way of avoiding our prohibition against improperly manufacturing jurisdiction is unavailable. But there is a second category—namely, Petitioners' dismissal must have precluded them from bringing the dismissed claims in the future.

Decisions from the Supreme Court and this Court help us know what is required to fit into this category. Let's start with what shows the opposite. In *Microsoft v. Baker*, the Supreme Court was asked to review the district court's denial of Baker's motion for class certification. 582 U.S. at 36. After the court denied Baker's motion for certification of an interlocutory appeal, she voluntarily dismissed the purported class's claims and then appealed, asserting that the class-certification order was now "final." *Id.* at 35–36. The Supreme Court held that Baker's tactic didn't work. For one thing, it contravened Federal Rule of Civil Procedure 23(f), which only allows for interlocutory appeals of class-certification orders with court approval. *Id.* at 40–41. For another, it all but guaranteed the piecemeal litigation that the final-judgment rule and Rule 23(f) seek to prevent; for, despite labeling the dismissal as "with prejudice," Baker's stipulation dismissing the claims permitted the purported class "to pursue their individual claims or to pursue relief solely on behalf of the class, should the certification decision be reversed." *Id.* at 35. In other words, the dismissed claims could be resurrected. So while the dismissal "purport[ed] to

11

end the litigation," it did not actually end it. *Id*. at 41; *see Sprint Nextel Corp.*, 938 F.3d at 122.

In contrast, the parties' creation of finality really did end the litigation in *Sprint Nextel Corp. v. Wireless Buybacks Holdings, LLC.* There, the defendant had been held liable for fraudulent representation, and the parties wanted that holding reviewed without incurring "the cost and expense of [a] trial" on damages. *Sprint Nextel Corp.*, 938 F.3d at 121. So rather than wait to appeal after litigating damages, the parties stipulated to a damage amount based on the scope of liability. *Id*. at 124. We held that, although the parties fashioned finality themselves, we still had jurisdiction to review their appeal. That's because—rather than being directly contingent on the outcome of the appeal—the stipulation remained binding on remand.[5] *Id*. at 125.

---

[5] *Sprint Nextel* explained that "the real-world effect of such a stipulation may turn *indirectly* on the result of an appeal: if the appellate court reverses and the defendant is found not liable, then the stipulation ultimately has no practical consequence." 938 F.3d at 124. There, the stipulated-to damages amount was based on the scope of the defendant's liability that the district court had determined on summary judgment. *Id*. at 125. And it was that determination of liability that was being appealed. *Id*. So an appellate holding that the district court incorrectly determined the scope of liability could indirectly impact the stipulation's practical consequence. *Id*. But the stipulation would remain binding on remand. *Id.* at 125–26.

*Keena v. Groupon, Inc.*, 886 F.3d 360 (4th Cir. 2018), does not stand for the proposition that any voluntarily dismissal for the purposes of finality, whether or not it prevents the party from bringing the claim again, is unreviewable. That case dealt with a purported class representative's attempt to get review of the district court's arbitration order by dismissing her entire complaint "with prejudice." *Id*. at 364. We held that the attempted creation of finality failed—"with prejudice" or not—because the "tactic also [violated] the longstanding principle that a party is not entitled to appeal from a consensual dismissal of her claims." *Id*. That is, unlike here, Keena was attempting to get appellate review on the precise issues she voluntarily dismissed. Thus, *Keena* does not prevent any "with prejudice" dismissal from supporting final-judgment jurisdiction; it prevents "with (Continued)

So we must ask whether Petitioners' dismissal of the seven claims precludes them from bringing the claims again, no matter the outcome of this appeal. On its face, it seems to—it states that the dismissal is "with prejudice." J.A. 433; *Dismissed with Prejudice*, *Black's Law Dictionary* (11th ed. 2019) ("[R]emoved from the court's docket in such a way that the plaintiff is foreclosed from filing a suit again on the same . . . claims.").[6] Of course, *Microsoft* tells us that simply labeling a dismissal as "with prejudice" isn't enough. 582 U.S. at 41. Unlike there, however, nothing in Petitioners' Notice of Voluntary Dismissal reserves the right to reinstate the seven claims pending the outcome of our review. *See id*. Instead, the dismissal unambiguously says twice that it is "with prejudice"—subject to no conditions. J.A. 433, 436. And we accept this unambiguous "with prejudice" dismissal to mean what it says. *Cf. Waugh Chapel*, 728 F.3d at 359 (reading an ambiguous dismissal as being a true "with prejudice" dismissal to establish appellate jurisdiction).

Yet there may be a lever to trigger future consideration of the dismissed claims that's out of Petitioners' control. The MSPB has the authority to "at any time reopen any

---

prejudice" dismissals *of the entire complaint* from supporting final-judgment jurisdiction. *Id*.; *see also Affinity Living Grp*., 959 F.3d at 638.

[6] No statute, rule, or regulation explicitly states that a dismissal of a claim from the MSPB "with prejudice" precludes a party from bringing the claim again. The regulations do, however, provide that a "[d]ismissal *without* prejudice is a procedural option that *allows for* . . . subsequent refiling of an appeal." 5 C.F.R. § 1201.29(a) (emphasis added). This definition, consistent with the accepted meaning of the phrase, implies that a dismissal *with* prejudice *does not* allow for the subsequent refiling of an appeal. *Cf. Bass v. U.S. Postal Serv.*, 96 M.S.P.R. 683, 686 (2004) (refusing to allow refiling of claim dismissed with prejudice); *Brown v. Dep't of Navy*, 102 M.S.P.R. 377, 382 (2006) (same).

13

appeal in which it has issued a final order." 5 C.F.R. § 1201.118. This includes reopening at the behest of a petitioner who voluntarily dismissed or withdrew his claims. *See Page v. Dep't of Transp.*, 110 M.S.P.R. 492, 495 (2009). If the MSPB can reopen Petitioners' dismissed claims, are they sufficiently incapable of resurrection?

The answer is yes. First, it need not be legally impossible for a dismissed claim to be reinstated in order to permit our review on appeal. Take *Sprint Nextel*. There, we held that the stipulation was binding enough to permit our review despite the fact there are "narrow circumstances when a party can be relieved from a stipulation." 938 F.3d at 122; *see United States v. Robertson*, 68 F.4th 855, 861 (4th Cir. 2023) ("[W]e have recognized only two exceptions that require setting aside a stipulation."). The circumstances in which the MSPB could reopen Petitioners' dismissed claims are similarly narrow: The power to reopen is available "only in unusual or extraordinary circumstances and generally within a short period of time after the decision becomes final." 5 C.F.R. § 1201.118. And this sliver of possibility is further narrowed by Petitioners' assertion on appeal that they have no intention of attempting to resurrect their voluntarily dismissed claims no matter our decision on review. The MSPB would need to reopen the claims *sua sponte*.

In addition, as a general matter, the power to reopen "is a common characteristic of agency action[] and does not make an otherwise definitive decision nonfinal." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598 (2016); *see Berry v. U.S. Dep't of Lab.*, 832 F.3d 627, 633 (6th Cir. 2016) (finding final agency action even though the Department could reopen its judgment in Berry's workers' compensation claim at any time, "either on its own initiative or in response to a[] request"); *cf.* 5 U.S.C. § 704. Indeed, the MSPB's

14

decisions would *never* be final if the mere possibility of reopening sufficed because § 1201.118 authorizes reopening *at any time.*[7]  *Cf. Sierra Club v. U.S. Nuclear Regul. Comm'n*, 862 F.2d 222, 225 (9th Cir. 1988).

In sum, we have jurisdiction to review the AJ's final order even though Petitioners contrived finality by dismissing the seven claims over which the AJ determined the MSPB had jurisdiction.  The dismissal was with prejudice, and nothing indicates that the narrow circumstances in which the MSPB could reopen the claims exist.  But even if they did, such an opportunity—at least in the administrative-review context—does not make the dismissal nonfinal.  We therefore need not worry about "erod[ing] the finality principle" by reviewing Petitioners' appeal, *Microsoft*, 582 U.S. at 37, because there's no realistic possibility of the piecemeal appeals or disrupted litigation that the principle seeks to prevent, *James*, 6 F.3d at 237; *see also Bell v. New Jersey*, 461 U.S. 773, 779 (1983) (explaining that the touchstone of administrative finality is "whether judicial review at the time will disrupt the administrative process").

---

[7] That said, where an agency "wish[es] to amend an order that is pending on review in a court of appeals[,] [o]rderly relations between the court and the agency ordinarily should require that the agency not undertake to modify its decision without permission from the court of appeals to reopen the agency proceedings."  16 Charles A. Wright et al., *Federal Practice and Procedure: Jurisdiction* § 3942 (3d ed. 2023).

B.      **The MSPB has jurisdiction over Petitioners' appeal.**

With our appellate jurisdiction established, we turn to the merits of the Petitioners'

challenge—whether the MSPB has jurisdiction.  That is a legal question we review *de*

*novo*.[8]  *Mouton-Miller v. Merit Sys. Prot. Bd.*, 985 F.3d 864, 868 (Fed. Cir. 2021).

1.      **Legal Background**

The Whistleblower Protection Act of 1989 and its attendant regulations come

together to form an agency-employee-grievance quagmire.  Luckily, we can simplify by

focusing on what's relevant here: what the Act prohibits, how and where an alleged

whistleblower can get relief, and what he must show to even get in the door to ask for that

relief.

The Act states that "[a]ny employee who has authority to take, direct others to take,

recommend, or approve any personnel action, shall not . . . take or fail to take . . . a

personnel action with respect to any employee . . . because of" his whistleblowing activity.

---

[8] The AJ based his conclusion that the MSPB lacked jurisdiction on his "findings" that the actions Petitioners assert CBP took aren't nonfrivolous allegations of personnel actions.  *See* J.A. 6.  And if the determination that the allegations were not nonfrivolous allegations of personnel actions were a factual finding, then we'd apply a more deferential standard of review.  *See* 5 U.S.C. § 7703(c)(1) (factual findings can only be set aside if they're "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"); *McIntosh v. Dep't of Def.*, 53 F.4th 630, 638 (Fed. Cir. 2022) (stating that the MSPB's findings of fact are reviewed for substantial evidence).  But, in an appeal to the MSPB under 5 U.S.C. § 1221(a), the question of whether an allegation is a nonfrivolous allegation of a personnel action is a *legal* question; for, as we explain below, it requires no facts to be found, but requires the AJ to accept the factual allegations as true and ask whether the allegations could be a personnel action as a matter of law.  *Cf. Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989) (noting that whether, accepting well-pleaded allegations as true, a complaint states each element of a cause of action is one answered "as a matter of law").  So we review that question, as well as the ultimate question of jurisdiction, *de novo*.

16

5 U.S.C. § 2302(b)(8).  Then, it provides that, "with respect to any personnel action taken, or proposed to be taken," the affected employee may "seek corrective action from the Merit Systems Protection Board."  § 1221(a).  This is called an "appeal" of the agency action to the MSPB.

Of course, the MSPB doesn't just dole out corrective action for everyone.  Rather, only when the appellant-employee proves, by "preponderant evidence," 5 C.F.R. § 1209.2(e)(1), that "a disclosure or protected activity . . . was a contributing factor in the personnel action which was taken or is to be taken against such employee" "shall" the MSPB "order such corrective action as the Board considers appropriate," 5 U.S.C. § 1221(e)(1).[9]  Breaking the Act into elements, this means that the appellant must prove that (1) the acting official had authority to take a personnel action and (2) the official took a personnel action (3) because of (4) whistleblowing activity.  *See Mikhaylov*, 62 F.4th at 867.  The Act defines "personnel action" with an exhaustive—but very broad—list of conduct.  Relevant here, "appointment[s]," "promotion[s]," "detail[s], transfer[s], or reassignment[s]," "decision[s] concerning pay," and "any other significant change in duties, responsibilities, or working conditions," are all "personnel action[s]." § 2302(a)(2)(A).[10]  Elements (1), (3), and (4) aren't in dispute here.  So the only additional

---

[9] In truth, even a successful showing doesn't guarantee corrective action.  The agency can thwart relief if it "demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of" the whistleblowing activity.  5 U.S.C. § 1221(e)(2); 5 C.F.R. § 1209.2(e)(2).

[10] In full, § 2302(a)(2)(A) reads:

(Continued)

17

information needed about those elements is that "because of" means "was a contributing factor," § 1221(e)(1), and that "whistleblowing activity" includes disclosing evidence of legal noncompliance, § 2302(b)(8)(A).

So, to get relief, an appellant must prove each of those elements. But all of this assumes that the MSPB *can hear* the employee's appeal in the first place—*i.e.*, the MSPB has jurisdiction. The MSPB's jurisdiction over claims under the Act is, unless otherwhere specified, limited to "agency personnel actions alleged to have been threatened, proposed, taken, or not taken because of the appellant's whistleblowing or other protected activity." 5 C.F.R. § 1209.2(a). And, in order to invoke that jurisdiction, an appellant "must make nonfrivolous allegations . . . with regard to th[ose] substantive jurisdictional elements."

---

(A) "personnel action" means—
    (i) an appointment;
    (ii) a promotion;
    (iii) an action under chapter 75 of this title or other disciplinary or corrective action;
    (iv) a detail, transfer, or reassignment;
    (v) a reinstatement;
    (vi) a restoration;
    (vii) a reemployment;
    (viii) a performance evaluation under chapter 43 of this title or under title 38;
    (ix) a decision concerning pay, benefits, or awards, or concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other action described in this subparagraph;
    (x) a decision to order psychiatric testing or examination;
    (xi) the implementation or enforcement of any nondisclosure policy, form, or agreement; and
    (xii) any other significant change in duties, responsibilities, or working conditions[.]

18

§ 1201.57(b).[11]  "A nonfrivolous allegation is an assertion that, if proven, could establish

the matter at issue."  § 1201.4(s).  That an allegation is "more than conclusory," "plausible

on its face," and "material to the legal issues in the appeal" provides evidence that it is

nonfrivolous.[12]  *Id.*; *cf. Neitzke*, 490 U.S. at 325, 327 (defining "frivolous," in part, as

---

[11] Along with making the requisite nonfrivolous allegations, for the MSPB to have jurisdiction, an appellant must "prov[e] by a preponderance of the evidence" that he exhausted the statutory complaint process, that his appeal is timely, and that he has standing.  5 C.F.R. § 1201.57(c)(1)–(3).  The MSPB does not allege that Petitioners failed to prove these requirements.

[12] The second sentence of the definition of "nonfrivolous allegation" inartfully states: "An allegation generally will be considered nonfrivolous when, under oath or penalty of perjury, an individual makes an allegation that" is "more than conclusory," "plausible on its face," and "material to the legal issues in the appeal."  § 1201.4(s).  This addition to the definition isn't very helpful.  It states neither a necessary nor a sufficient condition for nonfrivolity.  It only tells us what is "generally" a nonfrivolous allegation.  In other words, it contemplates times when allegations are nonfrivolous even though they fail to satisfy each condition as well as times when allegations are frivolous even though they do.  So it amounts to a confusing statement that gives us little to work with.  We, therefore, simply treat the last three attributes it mentions—nonconclusory, plausible, and material— as evidence that supports a determination that an allegation is nonfrivolous, because the attributes align with our approach to determining whether allegations are sufficient in other contexts.  *Cf. Langford v. Joyner*, 62 F.4th 122, 124–26 (4th Cir. 2023) (explaining that "well-pleaded allegations" do not include "conclusory statements" or allegations so generalized they become implausible (quotation omitted)).

An allegation being made "under oath or penalty of perjury," of course, would be evidence that the allegation is based in fact.  But the MSPB does not rely on this and we will not either.  If the clause were read imprecisely, then one could think that it suggests that allegations must be in affidavits or other sworn documents in order to be nonfrivolous.  Requiring that, though, would seem to place a burden *to prove* the allegations on the appellant at the jurisdiction stage.  The regulations suggest there is no such burden to prove the allegations rather than merely make them.  *Compare* § 1209.2(a) (stating the jurisdictional requirements for individual right of action appeals without mentioning a burden of proof), *with* § 1209.2(e) (stating the elements the appellant has the burden of proving "[o]nce jurisdiction has been established").  Casting more doubt on the clause's utility is the fact that we don't require sworn allegations in other pleading contexts.  *Cf. Langford*, 62 F.4th at 126.  So, while Petitioners here made no allegations under oath or
(Continued)

19

something "clearly baseless" or "fanciful"); *Frivolous*, *Black's Law Dictionary* 668 (6th ed. 1990) (defining frivolous as something for which "a proponent can present no rational argument based upon the evidence or law in support of" it).

This sets a low hurdle to establish the MSPB's jurisdiction. The appellant need only make nonfrivolous allegations; he need not prove each jurisdictional element.[13] *See Hessami v. Merit Sys. Prot. Bd.*, 979 F.3d 1362, 1369 (Fed. Cir. 2020); *Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 431–32, 435 n.9 (2017). Nor must the appellant make allegations that definitively *would* establish each element. *Cf. Perry*, 582 U.S. at 431. A nonfrivolous allegation is one that, if true, "*could*"—not would—"establish the matter at issue." § 1201.4(s) (emphasis added).

We need not rely solely on the regulation's choice of a "c" rather than a "w." By basing the MSPB's jurisdiction on an appellant's "nonfrivolous allegations," the regulations invoke the standard federal courts use in determining whether our own jurisdiction is satisfied. *See Perry*, 582 U.S. at 431. Addressing the MSPB's jurisdiction

---

penalty of perjury, that doesn't prevent their allegations from being nonfrivolous under 5 C.F.R § 1209.4(s).

[13] Unlike other MSPB appeals, an "appeal under the Whistleblower Protection Act, 5 U.S.C. 1221" is covered by 5 C.F.R. § 1201.57. § 1201.57(a)(1). And, to establish jurisdiction, that provision requires an appellant to only "make nonfrivolous allegations . . . with regard to the substantive jurisdictional elements." § 1201.57(b). Other MSPB appeals are governed by § 1201.56, which places on the appellant "the burden of proof, by a preponderance of the evidence" with respect to "[i]ssues of jurisdiction." § 1201.56(b)(2)(i)(A). These non-applicable regulations have been interpreted by the Federal Circuit as creating a two-step process for establishing jurisdiction: (1) making nonfrivolous allegations that could establish each element, and (2) having to prove, by a preponderance of the evidence, that each element is met in an evidentiary hearing. *See Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1330 (Fed. Cir. 2006).

over an appeal, *Perry* explained that "a nonfrivolous allegation of jurisdiction generally suffices to establish jurisdiction upon initiation of a case." *Id.* (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 537 (1995) (federal admiralty jurisdiction)). And we don't consider a jurisdictional assertion frivolous merely because it would ultimately fail. *See id.* (relying on *Bell v. Hood*, 327 U.S. 678 (1946)). It's only frivolous if it "is wholly insubstantial" or "patently without merit." *Bell*, 327 U.S. at 682–83. In other words, we have jurisdiction so long as the assertion could arguably succeed. *Id.*; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction.").

*Perry*'s application of these well-established federal jurisdictional principles to the MSPB confirms that the MSPB's regulatory definition means what it says: To establish the MSPB's jurisdiction, an appellant need only make "assertion[s] that, if proven, *could* establish the matter at issue." § 1201.4(s) (emphasis added).[14]

---

[14] This bar is lower than a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires that complaints "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint adequately states a claim if, when we "accept all well-pleaded allegations in the complaint as true and draw all inferences in the plaintiff's favor," we see that all elements of the stated cause of action are met. *See Langford*, 62 F.4th at 124. So it's not sufficient that an element *could* be satisfied if the allegations were true— it must *be* satisfied. Edward A. Hartnett, *Taming* Twombly*, Even After* Iqbal, 158 U. Pa. L. Rev. 473, 483 (2010) ("A judge's job on a motion to dismiss is to determine whether the legal theory or theories supporting a complaint are correct, not whether they are merely plausible."). Here—like under Rule 12(b)(6)—we accept the allegations as true; but—like under *Bell v. Hood*—we only ask whether it is *possible* each element is met.

For whistleblower actions, the requisite jurisdictional elements differ slightly from the elements that must be proven to win on the merits. The MSPB has jurisdiction over appeals "from agency personnel actions alleged to have been threatened, proposed, taken, or not taken because of the appellant's whistleblowing." § 1209.2(a). Thus, the three jurisdictional elements are (1) a personnel action was "threatened, proposed, taken, or not taken" (2) because of (3) the appellant's whistleblowing activity. The appellant must therefore make allegations that could establish each of these jurisdictional elements.

So we know what sort of allegations an appellant must make for the MSPB to have jurisdiction; but that raises the question of where the appellant must make said allegations. Although the statutes and regulations are silent on the matter, we can take a cue from another context in which we adjudge the sufficiency of a pleading's allegations: dismissals under Federal Rule of Civil Procedure 12(b)(6). *Cf. Perry*, 582 U.S. at 435 n.9 (analogizing to the Federal Rule of Civil Procedure to explain the MSPB's jurisdiction). There, like here, our assessment deals only with the sufficiency of allegations—not their truth. *See Langford*, 62 F.4th at 124. As a result, we don't look to extrinsic documents when determining whether a complaint states a claim upon which relief can be granted; rather, we limit our inquiry to the "allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 448 (4th Cir. 2011)); *cf. Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (explaining that a court may look to extrinsic evidence when assessing a factual challenge under a motion to dismiss for lack of jurisdiction because "[t]he burden of *proving* subject

22

matter jurisdiction . . . is on the plaintiff" (emphasis added)).  This suggests that our assessment of an employee's allegations for determining whether the MSPB has jurisdiction should be limited to the equivalent of the complaint, its exhibits, and documents incorporated by reference.  *See Hessami*, 979 F.3d at 1369.

What, then, is the MSPB's equivalent to a civil complaint?  One might consider the employee's statement of appeal that initiates the administrative proceeding to be most like the federal complaint.  This statement must include information mirroring the jurisdictional elements that must be nonfrivolously alleged, including "[e]vidence or argument that" (1) "[t]he appellant was or will be subject to a personnel action . . . together with specific indications giving rise to the appellant's representation; and" (2) "[t]he personnel action was or will be based wholly or in part on the whistleblowing or other protected activity." § 1209.6(a)(5).  Yet both Petitioners' and the MSPB's arguments frame the relevant complaint-equivalent as the jurisdictional briefing Petitioners made, at the AJ's request, after they filed their individual appellate statements.  We see no reason to reject that framing and ignore the jurisdictional briefing ordered by the agency.  First, the MSPB ordered the jurisdictional briefing, thus choosing to consider that information.  This is something federal courts themselves regularly do.  *See, e.g.*, *Med. Mut. Ins. Co. of N.C. v. Gnik*, 93 F.4th 192, 200 n.5 (4th Cir. 2024).  It would be incongruous to deny the agency that ability while preserving it for ourselves.  Second, the AJ consolidated Petitioners' appeals.  The individual appellate statements thus could not support jurisdiction for the entire consolidated appeal.  So for clarity and simplicity, we use the term "appellate

23

statement" to refer to initial appellate filings generally, as well as Petitioners' jurisdictional briefing specifically.[15]

In short, an employee can seek relief from the MSPB under 5 U.S.C. § 1221(a), but getting that relief requires vaulting two hurdles. To ultimately get relief, he must establish each element of the statute's cause of action by a preponderance of the evidence. Yet before he's able to put forward that evidence, he must get over a lower hurdle to show that the MSPB has jurisdiction over his appeal. As relevant here, that requires making nonfrivolous allegations in the appellate statement and reply that, if true, could establish that (1) a personnel action was "threatened, proposed, taken, or not taken" (2) because of (3) the appellant's whistleblowing activity. *See Yunus v. Dep't of Veterans Affs.*, 242 F.3d 1367, 1371 (Fed. Cir. 2001).

---

[15] We do not limit our consideration to the allegations contained in Petitioners' initial jurisdictional briefing. We also consider Petitioners' reply. Limiting our review to the initial jurisdictional brief would amount to a much stricter rule than what we use in federal civil proceedings. If a defendant moves to dismiss a complaint and points out deficiencies in the plaintiff's pleading, the plaintiff isn't bound by those allegations; she can add or change her allegations by amending her complaint as a matter of course or with the court's leave. Fed. R. Civ. P. 15(a). The MSPB's procedural rules provide no equivalent ability to amend. So limiting our review here to an employee's initial appellate statement would tie the hands of parties seeking to litigate before the MSPB beyond even the Federal Rules' strictures. And this would contradict the general idea that proceedings in front of agencies are less formal than those in front of Article III courts. *Cf. Hormel v. Helvering*, 312 U.S. 552, 556 (1941). Accordingly, the MSPB's jurisdiction should be assessed by looking not only to an employee's appellate statement, but also to the employee's reply to the defendant agency's pleading contesting jurisdiction.

24

**2.    Petitioners' nonfrivolous allegations could establish that CBP failed to take a personnel action because of their whistleblowing activity.**

The AJ found that the MSPB lacked jurisdiction over this appeal because CBP's alleged actions were not "personnel actions." And that's the only debated element before us. Recall that the three allegations at issue are (1) that CBP "[c]eased contemplating permanent promotions for [Petitioner]s, which were anticipated prior to February 15, 2018"; (2) that CBP "[r]elegated WMDD to a branch under . . . OFTD"; and (3) that CBP "[r]educed the WMDD's size and proceeded to dismantle the Division." J.A. 323. So we ask whether these are nonfrivolous allegations that, if true, could establish that CBP had "threatened, proposed, taken, or not taken" a "personnel action" as defined in 5 U.S.C. § 2302(a)(2)(A). 5 C.F.R. §§ 1201.57(b), 1209.2(b)(1).

**a.    The first allegation could establish that CBP did not promote Petitioners.**

Petitioners first allege that CBP "ceased contemplating permanent promotions for" them following the revelation of their whistleblowing in February 2018. Implicit within that statement is the assertion that CBP did not, in fact, promote Petitioners. And "promotion" is explicitly listed as a "personnel action" in § 2302(a)(2)(A)(ii). So Petitioners can be fairly taken as alleging that a personnel action, promotion, was "not taken" by CBP. *See* 5 C.F.R. §§ 1209.1, 1209.2(a), (b)(1).

That, by itself, would seem to satisfy the requirement that the Petitioners allege that CBP had "threatened, proposed, taken, or not taken" a "personnel action." But we must also verify that the allegations are "nonfrivolous." Consider again the regulatory definition

25

of "nonfrivolous allegation." It states that an assertion is a nonfrivolous allegation if, taken as true, it could satisfy the matter at issue. *See* 5 C.F.R. § 1201.4(s). And it indicates that an allegation is nonfrivolous if it is nonconclusory, plausible, and material. *Id*.

Petitioners' assertion that CBP stopped considering them for promotions is neither conclusory, nor implausible, nor immaterial. To begin, it's not a conclusion of law. As the Supreme Court has established, we need not "accept as true a legal conclusion couched as a factual conclusion." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). But here, Petitioners' allegation is an assertion of fact. Rather than merely asserting that "CBP took or did not take a personnel action"—which requires a legal conclusion as to what constitutes a personnel action— Petitioners simply state, based on their own personal knowledge, what happened to them in the real world. That is, they assert that, following their whistleblowing, CBP stopped considering promoting them and never did promote them.

Additionally, rather than being "unadorned," the assertion has "factual enhancement." *Cf. Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quotation omitted); *see also Conclusory*, *Black's Law Dictionary* (11th ed. 2019) ("Expressing a factual inference without stating the underlying facts on which the inference is based[.]"). Petitioners assert that they and their division were recognized as highly successful before the February 15, 2018, email—which supports a contemplated promotion—and that their responsibilities and status plummeted after that email—which supports the promotions being taken off the table. These assertions rationally support the allegations that CBP

26

refused to promote Petitioners and to even consider promoting Petitioners. So those allegations are not conclusory.

The facts OSC found in its report, which Petitioners attached to their reply, also show that Petitioners' factual assertions are plausible. *See Yunus*, 242 F.3d at 1372 (holding that allegations were nonfrivolous when shown to be established facts). Generally, to be "plausible," a claimant must allege sufficient factual matter to "nudge[] [a] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009). And here, the facts included in the Petitioners' appellate statement do just that. For example, the report points to an email from October 2017 that praised Petitioners' work, as well as emails after February 15, 2018, that removed or decreased Petitioners' responsibilities, duties, access, and pay. More pointedly, OSC noted that CBP leadership was "attempt[ing] to secure higher-graded, permanent positions for the division" before February 15, 2018. J.A. 300. After that date, leadership gave them lower or no performance awards, didn't select Jones for the OFTD Director position (a higher-level, GS-15 position), and "drastically reduce[d] the team's . . . functions and essentially eliminate[d] the WMD program." J.A. 298–301. The plain inference is that leadership was no longer attempting to get Petitioners higher-grade, permanent positions. This more than "nudges" the allegations from merely conceivable to plausible.

Finally, the fact that a previously contemplated promotion wasn't granted or even considered after Petitioners' whistleblowing is material to whether CBP did or did not take a personnel action. In order to be material, the allegations must be relevant to and "hav[e] influence or effect" on the matter in question. *Material*, *Black's Law Dictionary* 976 (6th

27

ed. 1990).  Again, the matter in question here is whether CBP's decision not to promote Petitioners constituted a personnel action that CBP did not take.

Since the AJ looked to 5 U.S.C. § 2302(a)(2)(A)(ii)'s reference to "a promotion," we'll begin there.  The statute clarifies that "a promotion" *is* a personnel action. § 2302(a)(2)(A)(ii).  But the statute does not define "promotion," so we look to the ordinary meaning of the word at the time Congress enacted the statute.  *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 454 (2012).  As relevant here, a promotion is an "advancement in rank or position."  *Promotion*, *Random House Dictionary of the English Language* 1548 (2d ed. 1987); *Promotion*, *The New Merriam-Webster Dictionary* 581 (4th ed. 1989) ("advance[ment] in station, rank, or honor").  Accordingly, one would refer to both a move to a higher role on the organizational chart and a move from a lower-paid class of employee to a higher-paid one as "a promotion."

Petitioners allege CBP leadership was "attempt[ing] to secure higher-graded, permanent positions for the [Petitioners'] division."  J.A. 300.  Moving from a lower-graded position—*e.g.*, GS-14—to a higher-graded position—*e.g.*, GS-15—would be an "advancement in rank or position."  *See Promotion*, *Random House*, *supra* at 1548.  And ultimately, Petitioners allege that CBP did not grant them any of the contemplated promotions.  That means that CBP ended up "not tak[ing]" the action of promoting Petitioners.  *See* 5 C.F.R. § 1209.2(b)(1).  So, since the allegations establish that CBP did not do something that would classify as a promotion, they are plainly material to determining whether CBP took or did not take a personnel action.

28

Based on these considerations, Petitioners made nonconclusory and plausible allegations material to whether any actions "threatened, proposed, taken, or not taken" by CBP were personnel actions. Furthermore, those allegations, taken as true, "could establish the matter at issue" because they plainly assert CBP did not take a personnel action—promotion—*vis á vis* the Petitioners. That resolves the dispute on the only contested element we have before us today.

In resisting this conclusion, the AJ held that Petitioners did not make nonfrivolous allegations that CBP's actions were "cognizable as a personnel action." J.A. 8. He "f[ound] the alleged agency remarks were too preliminary and speculative to amount to a nonfrivolous allegation of such an action." *Id.* That is, even accepting as true Petitioners' claims about how their superiors in CBP led them to expect advancement and then didn't deliver, those allegations were legally insufficient to establish that the agency failed to promote Petitioners. Such a nonfrivolous allegation, the AJ suggested, requires alleging that the position already existed and that either someone else was selected or the vacancy was cancelled. The AJ concluded that it is legally insufficient to merely allege that an agency essentially failed to *create* a position into which it could promote a petitioner.

It's true that some MSPB precedents indicate that this allegation would not be actionable on the merits.[16] But we aren't dealing with the merits. Indeed, the core of the

---

[16] In some cases, the MSPB has held that the fact someone wasn't placed in a higher position or given a higher salary is only a "fail[ure] to promote," and thus actionable, when a position had been announced and then filled with another person. *See Slake v. Dep't of Treasury*, 53 M.S.P.R. 207, 215–16 (1992); *Schmittling v. Dep't of Navy*, 92 M.S.P.R. 572, 578 (2002). Those opinions, however, aren't the most relevant here, because several other (Continued)

AJ's mistake was confusing success on the merits with the MSPB's jurisdiction. Without deciding what, precisely, an appellant must show to prove the personnel action element on the merits, it is, at minimum, a heavier burden than that needed to establish the MSPB's jurisdiction. Most obviously, the merits require that the appellant establish, by a preponderance of the evidence, that the challenged agency conduct does in fact meet the statutory definition of "personnel action." Beyond that, assuming that employees may bring claims pursuant to an agency's "fail[ure] to take" a personnel action,[17] such claims may require showing that the agency did not do something that both the agency and the appellant reasonably expected the agency was going to do. *See Fail*, *Random House*, *supra*, at 692 ("to fall short of success or achievement in something expected, attempted,

---

MSPB opinions have determined that allegations that the agency did not advance the employee to a higher GS level as promised were personnel actions. *Broughton v. Dep't of Agric.*, 94 M.S.P.R. 347, 351 (2003); *Gilmore v. Dep't of Army*, 83 M.S.P.R. 16, 19–20 (1999).

[17] We leave open whether a "failed to take" claim is actionable under 5 U.S.C. § 1221(a). By its own terms, the statute says that the individual right of action only applies "with respect to any personnel action *taken, or proposed to be taken*, against [a complaining] employee, . . . as a result of a prohibited personnel practice." § 1221(a); *see also* § 2302(a)(1) (defining "prohibited personnel practice"). And further down, the statute clarifies that the MSPB "shall order . . . corrective action . . . if the employee . . . has demonstrated that a disclosure or protected activity . . . was a contributing factor in the personnel action which was taken or is to be taken against such employee." § 1221(e)(1). Those seemingly ill-phrased provisions may imply that an individual right of appeal is only permitted when an employer takes or proposes to take a personnel action—*not* when an employer simply fails to or does not take such an action. But § 1214, despite seeming to govern procedure more than substantive rights, throws some ambiguity into the mix by saying that "[a]n employee . . . may seek corrective action from the Board under section 1221, if such employee . . . seeks corrective action for a prohibited personnel practice described in section 2302(b)(8)," which includes the failure to take personnel actions. §§ 1214(a)(3); 2302(b)(8).

30

desired, or approved"); *accord Ruggieri*, 454 F.3d at 1326.[18]  *But see* 5 C.F.R. § 1209.7(a)

("[T]he Board will order appropriate corrective action if the appellant shows by a preponderance of the evidence that the disclosure or other protected activity was a contributing factor in the personnel action that was threatened, proposed, taken, or *not taken* against the appellant." (emphasis added)).

Whatever the standard for the merits, none of this is needed to show that an allegation, if true, could establish that the agency did not take a personnel action.  Most critically, the alleged conduct need not in fact meet the statutory definition of "personnel action."  Remember, it need only be *possible* that the alleged conduct would do so.  Thus, even if an AJ has doubts that conduct would be held a "fail[ure] to take a personnel action," that does not mean the MSPB doesn't have jurisdiction over the appeal.  *Cf. Bell*, 327 U.S. at 682–83.  And note again that the jurisdictional element is not "took or failed to take," but simply "took or did not take."  *Compare* 5 U.S.C. § 2302(b)(8), *with* 5 C.F.R. § 1209.2(b)(1).  "Did not take"—potentially unlike "failed to take"—does not connote any reasonable expectation that the act be taken.  It connotes only lack of action.  Add to this the fact that it need only be plausible that the agency did not take the action, and one can see that the bar for jurisdiction is low.[19]

---

[18] Under this view, for example, a judge would not "fail to promote" a law clerk by not giving the clerk the title "Senior Law Clerk" if that position does not exist and the two never discussed creating it, for that "promotion" would not have been reasonably expected.

[19] So, if the law clerk from the prior hypothetical appealed to the MSPB, the clerk may not win in the end, but the MSPB would still have jurisdiction—as far as the "personnel action" prong is concerned—since a judge not promoting the clerk to Senior Law Clerk could amount to "not tak[ing]" a personnel action.

Here, if true, Petitioners' allegation that CBP "ceased to contemplate permanent promotions that were expected" could establish that CBP did "not take[]" a personnel action. There is no statute nor binding case law that would make it impossible for the conduct to satisfy the element. Instead, being advanced to a higher-grade position not only could, but does, fit within the plain meaning of "promotion," and "ceasing to contemplate" that promotion could amount to a "not tak[ing]" that action.

The MSPB thus has jurisdiction over Petitioners' claim that CBP "ceased to contemplate permanent promotions that were expected" because of their whistleblowing activities. Their assertion is a nonfrivolous allegation as to the personnel-action jurisdictional element. And the MSPB doesn't argue the other jurisdictional elements aren't met.

> **b.    The second and third allegations could establish that CBP "significant[ly] changed" Petitioners' "duties, responsibilities, or working conditions."**

Petitioners' second and third allegations were that CBP "relegated WMDD to a branch under OFTD" and "reduced WMDD's size and proceeded to dismantle the Division." The AJ found that these were not discrete claims, explaining: "[Petitioner]s do not seem to contend that the second and third alleged events would be considered [Whistleblower Protection Act] personnel actions on their own, as opposed to events that contributed to the first alleged personnel action." J.A. 7. And so the AJ did not separately evaluate these claims.

To begin, the AJ was wrong not to analyze these claims separately. The regulations make clear that the MSPB's jurisdiction must be analyzed as to each alleged personnel

32

action—it has jurisdiction "with respect to *personnel actions . . .* that are allegedly threatened, proposed, taken, or not taken." 5 C.F.R. § 1209.2(b)(1) (emphasis added). Petitioners' appellate statement listed each of the three allegations at issue as "actions by the Agency," which should have been sufficient for the AJ to determine that they were separate alleged personnel actions that required individual analyses for the purpose of jurisdiction. *See* J.A. 176–77. If, as the AJ determined, acknowledging that actions were related was enough to turn all actions into a single "personnel action," then there would likely never be any appeals involving multiple personnel actions.

Moreover, the MSPB has jurisdiction over these two claims because they're nonfrivolous allegations that CBP took a personnel action. To begin with, the allegations are nonconclusory, plausible, and material for the same reasons Petitioners' promotion allegation is: They're backed by extensive, believable factual allegations in Petitioners' appellate statement and reply. *See* 5 C.F.R. § 1201.4(s); *see, e.g.*, J.A. 173 (alleging email placing WMDD under OFTD); J.A. 176 (alleging that CBP "reduced WMDD from a division to a 'branch' under OFTD"); *id.* (alleging that WMDD was "transferred to Laboratory and Scientific Services Division"); J.A. 271 (citing email recapping meeting during which Jennings "announced that the DNA Project and MS-13 Project were being removed from WMDD"); J.A. 289 (OSC determining that CBP leadership "isolated the WMDD from interaction with upper-level agency officials and minimized its role"); J.A.

33

294 ("For nearly two years, the [WMDD] team was left idling, with no budget, clear direction, or official activities/duties.").

These allegations, if true, could establish a personnel action that falls into the last, catchall clause of 5 U.S.C. § 2302(a)(1)(A)—"any other significant change in duties, responsibilities, or working conditions." § 2302(a)(1)(A)(xii). WMDD went from a solitary division to being a branch under another division. It's not a stretch to think that this could amount to a "significant change in [Petitioners'] . . . working conditions"—they became answerable to and controlled by another division. *See* J.A. 294 (after the February 15, 2018, email, leadership's "communications focused . . . on reminding [WMDD] of its place as a branch under OFTD"). Similarly, a reduction of WMDD's size and progressive dismantling of the division could greatly alter Petitioners' duties, responsibilities, and working conditions. It's possible that they would no longer have the manpower or autonomy that they did before and that the duties and responsibilities they had as members of WMDD could be replaced with new duties appropriate to the divisions they were assigned to. *See* J.A. 294 (describing WMDD teams as being "left idling").

Petitioners' last two assertions, therefore, amount to nonfrivolous allegations that CBP took a personnel action. 5 C.F.R. §§ 1201.57(b), 1209.2(b)(1). And since the other jurisdictional elements are uncontested, the MSPB has jurisdiction over Petitioners' appeals as to both assertions.

\*          \*          \*

When it comes to proceedings before the MSPB, the line between jurisdiction and the merits may be murky. But it is important to get the distinction right. Here the AJ

34

assessed whether Petitioners' claims could jump over the higher merits bar when he was

supposed to be assessing whether they could step over the lower jurisdictional bar.  Because

of that error, the AJ's decision must be

*REVERSED.*